# Mary Ann Long's Appeal.

1. A bill in equity prayed "that the ownership, possession, care and control of said leaseholds, the profits therefrom and the products thereof, be decreed to plaintiff, to the extent of his purchase of the interest of L. therein, and that the possession thereof be surrendered to plaintiff, and the defendants be restrained and enjoined from in any way interfering with or disturbing the same." *Held,* that this was an ejectment bill, and should be dismissed.

2. The parties to said controversy agreed that in the equity case between the parties and two ejectment suits between the same parties, by consent of counsel, the court should decree an issue to supersede and take the place of the ejectment cases, the determination of said issue to decide the issues of fact, raised in the bill of equity, as to the title of said leaseholds, the costs of the bill in equity to follow the verdict in the issue ordered. *Held,* that this submission was binding on the parties, and the verdict of the jury was conclusive.

November 17th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ. STERRETT and GREEN, JJ., absent.

Appeal from the Court of Common Pleas of *Butler county:* Of October and November Term 1877, No. 237. In Equity.

Bill in equity, filed by R. L. Brown against George S. Long, Mary Ann Long, his wife, F. Prentice, J. B. Barbour and S. M. Wheeler, associates, as the Relief Pipe Line.

The bill was filed on the 13th of January 1875.

The subjects of the bill were two leasehold estates or oil rights in Fairview township, Butler county, one of two and a half acres, known as "the Jamison lease," and the other of five acres, known as "the McDermott lease;" two wells (one on each lot), and the fixtures, machinery and tools of or with them, and the oil from them.

Brown, the plaintiff, with Martin, "Brown & Martin," had a judgment against George S. Long, in the Common Pleas of Armstrong; and, upon a testatum fieri facias from it, supposed interests of Long in these subjects were sold to him, on the 27th of August 1874. And he alleged, in his bill, that, at that time, Long owned, and he had acquired by this sale, an undivided half of such of these subjects as were of and on the Jamison leasehold, and the same interest in such of them as were of and on the McDermott leasehold: and that the other half interests were owned by the other

defendants, Prentice, Barbour and Wheeler, as the Relief Pipe Line Company.

The plaintiff further alleged in his bill, that Long and Mrs. Long had conspired to defraud him of the interests so acquired by him, and that, in the furtherance of this conspiracy, Mrs. Long had claimed, and was claiming them, as her separate property: and had denied that Long had any interest in any of these subjects at the time of the sales to the plaintiff; and that, in consequence of her claim and denial, the other defendants refused to recognise his claim.

The bill had nine prayers. The 7th was for a preliminary injunction to restrain the other defendants from recognising the claims of Mrs. Long, and her and Long from enjoying the subjects. And the 3d was that all the defendants be restrained from setting up Mrs. Long's claims. The 8th was the general one—for further relief; and the 9th was for costs. The substance of all the other prayers was, that the interests claimed by the plaintiff be decreed to him. The prayer for a prelimitary injunction was refused.

Mrs. Long's answers were filed the 25th of February 1875. The material substance of them was, that Long never had any estate or interest in any of the subjects of the bill, except as her husband; that the plaintiff acquired nothing by the sheriff sales referred to, and that she and Long had not conspired as alleged. That she obtained the Jamison lease from the administrators of the estate of Jamison, for herself, some time before the first day of May 1874; and had on that day assigned a half interest in it to S. M. Wheeler, and that he had assigned interests to Prentice and Barbour, who, with him, constituted the Relief Pipe Line Company, or were members of it. And that she and they had obtained the McDermott lease in the spring of 1874, for herself and themselves.

The other defendants answered, that they had contracted with Mrs. Long as stated by her in her answers: and that, so far as they knew, she owned the interests in the subjects claimed by her. The court appointed an examiner and master, and much oral and documentary evidence was taken and laid before him. He heard the counsel of the parties upon the question whether the case was within the equitable jurisdiction of the court as well as upon the facts, and on the 13th of October 1876, presented a report to the court wherein, upon the subject of jurisdiction, he, inter alia, said:

"By his own bill the plaintiff admits that the question of title is to be solved before any of the relief prayed for can be granted, and aided as it is by the answer of Prentice, Barbour & Co., if that question were solved for him there would be no other relief needed. In his prayer for a decree of the court vesting in him the "ownership, possession, care and control" of the property in dispute, he certainly asked for something that a court of equity,

[Long's Appeal.]

in this case, could not give.　To establish his own title to this property, to break down and overthrow the title of Mary A. Long, and to compel the other owners of the property, Prentice, Barbour & Co., or the Relief Pipe Line, to acknowledge his title, and admit him to a joint possession and control, his appropriate remedy is by ejectment at law : Gloninger et al. *v.* Hazard, 6 Wright 391 ; North Pennsylvania Coal Co. *v.* Snowden, Id. 448.　And where, as in this case, it is purely a question of title, it is his only remedy, for it is to be observed that there is no complication of accounts here.　The defendants, Prentice, Barbour & Co., or the Relief Pipe Line, are ready and willing to account for the full production, and pay over half the profits of the wells, subject to the agreement, for the payment of debts for labor and drilling, whenever it is legally determined to whom and with whom they should so account.　Neither does the plaintiff, in his bill, allege that either Prentice, Barbour & Co., or the Relief Pipe Line Co., who are the recipients of the whole production, are, or are likely to become, insolvent; nor does the testimony disclose any cause for alarm on this ground.　All these inquiries have been stripped from the case, and there is purely the question of ownership in it.　It was long ago held that ejectment at law was almost the only form to try title in this state (Morris's Lessee *v.* Vanderen, 1 Dall. 67), and whatever the exception in the mind of the court, at the time, may have been, it is certain that a bill in equity for that purpose alone was never sustained.　It may be otherwise where the question of title is interwoven with other important questions purely equitable, on the solution of which a court of equity only could render adequate relief.　It has also been held that a simple denial by one tenant in common of a co-tenant's title or right to participate in the profits after demand made, is sufficient to enable the latter to maintain an action of ejectment : Law *v.* Patterson, 1 W. & S. 184 ; McMahan *v.* McMahan, 1 Harris 376.　And this, as shown in the cases above cited, is a plain and adequate remedy for one tenant in common against his co-tenant.　In this case, had the plaintiff's bill been demurred to on this ground alone, it would certainly have been dismissed by the court, as the plaintiff not only admits such denial but makes that the *gravamen* of his complaint. On his own statement of facts he defeats the remedy he has chosen."

The master recommended that the costs should be decreed against Mrs. Long, because, in his opinion, she had been remiss in objecting to the exercise of the equitable jurisdiction of the court.　Mrs. Long excepted as to these costs, and the plaintiff as to the jurisdiction.　The court, Bredin, P. J., sustained this latter exception in an opinion, inter alia, saying :

" If the claim set up by George S. Long and his wife, is a fraudulent claim, and her title void as to the creditors of George S. Long, then equity has jurisdiction to ferret out and expose the fraud, and

set aside the fraudulent conveyance, agreement or other act whatever, which gives Mrs. Long the apparent ownership in the property. There is perhaps no mode of fraudulent concealment of a debtor's property so often resorted to as to hold the title to property in the wife's name. It would be strange, indeed, if the jurisdiction of equity in case of fraud, could not be invoked in such cases.

"The plaintiff's bill may be defective in not setting these matters out plainly and specifically, as they ought to have been set out, but after an examiner and master has been appointed, by consent, and the real facts at issue freely gone into, by both parties, it is too late to ask to have the bill dismissed, where the defect is not in the case itself, but in the statement of it merely.

"Whether we can give plaintiff all the relief he asks, is not maintained. The court can give him substantially what he asks. If it holds the title of Mrs. Long to be fraudulent against the creditors, and compels Barbour & Co. to account to her, the possession of the house on the leasehold is but a small matter comparatively, and the decision of the questions at issue here would certainly conclude Mrs. Long from setting up title thereto.

"We think, since the new constitution authorizing parties to waive trial by jury, a greater effect should be given to parties consenting to appointment of a master than heretofore. For these reasons exceptions to the master's report sustained, and the report re-committed to the master to proceed according to law."

The master's report was filed on October 3d 1876, and the above opinion filed on January 15th 1877. On September 26th 1876, Brown brought two actions of ejectment against all the defendants named in the bill, one for the McDermott leasehold and the other for the Jamison.

To each of these actions there was an appearance for Mrs. Long, and the plea of "not guilty" entered. They were at issue, and were set down for trial at January Term 1877, by the plaintiff, and were on the trial list for that term.

These three cases—this bill in equity and the two ejectments mentioned, were consolidated, in open court, by the parties, on the 15th of January 1877, upon the reversal of the master's report. The record of their consolidation is in these words:

"R. L. Brown *v.* George S. Long and wife, and others.

"In the equity case between these parties, and the two ejectment cases, between same parties, by consent of counsel, the court direct an issue between R. L. Brown, as plaintiff, and G. S. Long and wife, defendants, to supersede and take the place of the ejectment cases for trial next week, and to be for trial next week: in which issue plaintiff shall allege that the undivided one-half of the leaseholds described in said bill, and writs of ejectment was at the time of his purchase thereof at sheriff's sale as the property of George

S. Long, owned by said George S. Long, and not by his wife, Mary Ann Long; and that the title thereto, held in the name of Mary Ann Long, was fraudulent and void as to the creditors of George S. Long, being held in her name with intent to delay, defraud and hinder the creditors of George S. Long. And defendants shall deny said allegations of plaintiff, and aver that said property was owned by her as her separate estate, and that said George S. Long, her husband, had no interest therein. The determination of said issue to decide the issues of fact raised in the bill of equity as to the title of said leaseholds; and the costs of the bill to follow the verdict in the issue now ordered.

BY THE COURT.

January 15th 1877."

The cases thus consolidated were tried at April term 1877. The testimony taken before the master was read as depositions, and some of the same witnesses and others were examined before the jury.

On April 28th 1877, the jury rendered a verdict for defendants. On July 11th 1877, the plaintiff moved the court " to set aside and strike out the verdict of the jury, and if necessary to the merits of the cause to reform the order for the issue *nunc pro tunc*, so that the final decree may be upon the merits of the cause." In September 1877, the court, after argument, filed an opinion, wherein they, inter alia, said:

" In this case the master and examiner reported (without passing on the testimony) that the case was not within the equity jurisdiction of the court, and that George S. Long and wife should pay the costs. The court reversed the master's decision as to the jurisdiction, and discharged a rule taken by him on the Longs to pay his fee. The argument and proceeding under the rule, led to some ill feeling. When, therefore, defendants objected to a reference back to the same master, we felt it would be indelicate to act under the circumstances. To refer the case to a master who had not heard or seen the witnesses examined, was objectionable; while to retake the testimony, would be very expensive and the cause of considerable delay. Under these circumstances, we suggested an issue to a jury, proposing that issue to be substituted for and take the place on the trial list of an action of ejectment for the leaseholds in dispute, then pending, and for trial in a few days. All parties represented to us, that owing to the manner in which the production of the wells was disposed of, a speedy decision was very important to all concerned. The suggestion of the court was agreed to, and the order for the issue drawn up by the court. We had no intimation that any other or greater effect would be given to the verdict of the jury, than in any other issue directed from the equity side of the court, until after the motion for a new trial

was disposed of; and on the argument on the bill itself, when it was, for the first time, contended that the verdict was conclusive on us.

"We can not so consider it, but hold it to be our duty to examine the testimony submitted to the jury; and while giving due weight to the verdict on all disputed facts, to decide whether the verdict is fairly supported by the evidence, and to decree accordingly."

The court then proceeded to review the testimony, and being of the opinion, that the evidence did not support the verdict, made the following decree:

And now, to wit: September — 1877. After hearing and argument we do order and decree:

1st. That F. M. Prentice, J. Barbour and S. M. Wheeler, partners, as the Relief Pipe Line, be, and are hereby restrained and enjoined from accounting with or paying to George S. Long or Mary A. Long, the products or profits heretofore or hereafter realized from the wells and leaseholds referred to in plaintiff's bill, or any part thereof.

2d. That said F. Prentice. J. Barbour and S. M. Wheeler, partners as Prentice, Barbour & Co., and the Relief Pipe Line Company, be, and are hereby ordered and required to account for and to pay over to the plaintiff, the one-half of the net profits or products of the wells and leaseholds referred to in plaintiff's bill.

3d. That George S. Long and Mary Ann Long, his wife, be, and are hereby restrained and enjoined from receiving any part of the products or profits of, or property on, the leasehold referred to in plaintiff's bill, and from interfering with the plaintiff, R. L. Brown, in the use and possession thereof.

4th. That George S. Long and Mary Ann, his wife, pay the costs of this proceeding."

The defendants took this writ and alleged, that the court erred:

1. In sustaining the plaintiff's fourth exception to the report of the master, which exception was:

That "the master erred in his conclusion of law—that the plaintiff had an adequate remedy at law, and that equity had no jurisdiction."

2. In sustaining the plaintiff's fifth exception to the report of the master, which exception was:

That "the master erred in recommending a decree dismissing the bill."

3. In reversing the report of the master, and holding the complaints of the bill proper subjects of his equitable jurisdiction.

4. In not confirming the report of the master, except as regards costs and dismissing the bill, and decreeing all the costs against the plaintiff.

[Long's Appeal.]

5. In not sustaining the defendants' first exception to the report of the master, which exception was:

That "the learned master erred in recommending that these defendants should be decreed to pay the costs, or any costs in this proceeding; because such a decree would be an exercise of jurisdiction, and, as the learned master has rightly found, this court has no jurisdiction in equity of the case presented by the bill and answers."

6. In not sustaining the defendants' second exception to the report of the master, which exception was:

"And the master erred in recommending that any costs be imposed upon George S. Long, he not being a party, except by the form of the plaintiff's bill."

7. In not dismissing the bill upon the verdict of the jury, and decreeing the costs against the plaintiff

And in making the foregoing decree

*Edw. M. Bredin*, *McCandless & Greer* and *Kennedy Marshall*, for appellants.—The object of the submission was not the loose opinion of a jury, but a conclusive verdict. It was the act of the parties; they consented to the submission. The true reading of the record of the submission is, that although it was entered in equity, that case was not the principal but the ejectments were; and that they were to be tried, and the equity case was to depend on the verdict.

The bill was an ejectment bill. The plaintiff alleged that the defendants were in possession of lands, and things connected with them, in all which he owned interests, through Long; and from which they excluded him. He admitted himself out of possession and enjoyment; and that his title or right to either was denied by the defendants. And he prayed to be decreed possession and enjoyment; and that Long and Mrs. Long should be debarred from both. These allegations were proper subjects of ejectment; and these ends were attainable by that remedy, and its incidents, a declaration for mesne profits, and a writ of estrepement. And the decrees are for what he could have so recovered and secured.

Why does the allegation of fraud bring his case within the equitable jurisdiction of the court? The ultimate question is, whether the title was in Long when the plaintiff purchased? Presumptively that is a question for a court of law; and it is not seen why the nature of the evidence or facts upon which it depends, renders it a question for a court of equity. Fraud, except by trustees, partners, and the like, is not peculiarly cognisable in equity. Mrs. Long stood in no such relation to the plaintiff.

But the plaintiff alleges, in his bill, that Long stood in such relation to Prentice, Barbour and Wheeler, as regards the property in dispute, at the time he purchased; that he has succeeded to Long's

11 NORRIS—12

rights; and that Long, through the fraudulent agency of Mrs. Long, was still enjoying them. Suppose the fraudulent agency of Mrs. Long had not been alleged, and the allegation was merely that Long was still enjoying, and that was admitted—the question would then be, whether Long's interest had passed to the plaintiff; abstractly, whether the interest of one of two common owners remained in him, or had become a stranger's. Would the stranger's remedy be at law, or in equity? We see no reason to doubt that it would be at law; and the presumption is, that it would; and, if it would, why is it in equity because of the alleged fraud of Long and Mrs. Long? That allegation does not change the question. It still is, whether Long owned as the plaintiff alleges. The allegation of fraud is but collateral.

*Thompson & Scott, George W. Fleeger* and *E. S. Golden*, for appellees.—Equity has jurisdiction. The plaintiff alleges that the claim of Mary A. Long and George S. Long, that the property was the property of Mary A. Long, was fraudulent and intended to cheat and defraud the creditors of said George S. Long. The bill prays an account. R. L. Brown having succeeded to the rights of George S. Long, was entitled to an account. George S. Long, being the owner of one-half, and Prentice, Barbour & Co. of the other, there was a quasi-partnership, and equity would have jurisdiction. The defendants answered on the merits, raised no question as to jurisdiction, agreed to the appointment of a master, and took their testimony before him. They are, therefore, too late in raising the question of jurisdiction: Bank of Kentucky v. Schuylkill Bank, 1 Parsons 181; Brightly's Eq., sect. 723.

So also a court of equity has power to try all questions of fact arising in a cause, without granting an issue or reference to a jury: McCallum v. Germantown Water Co., 4 P. F. Smith 40. Although there may be a remedy at law, this of itself does not oust the control of chancery: Wesley Church v. Moore, 10 Barr 274; Kirkpatrick v. McDonald, 1 Jones 387; Finlay v. Aiken, 1 Grant 83; Skelton v. Wester, Brightly's Rep. 234; Bank v. Adams, 1 Parsons 541; Watson v. Sutherland, 5 Wall. 78; Wilhelm's Appeal, 29 P. F. Smith 121; Porterfield & Treat's Appeal, 27 Id. 221.

Moreover, the leases to Mrs. Long in the present case, were not for the land itself, but for the exclusive privilege of boring and mining for oil; in other words, a license not applying to the surface, but to the minerals; very much like the lease in Funk v. Haldeman, 3 P. F. Smith 229, and in Union Petroleum'Co. v. Blivens Petroleum Co., 22 Id. 173, in both of which cases it was held, ejectment would not lie; and hence the present case, we think, is upon that ground peculiarly within the province of equity. And again, it is worthy of note, that Brown, the plaintiff, became the purchaser of an undivided interest with Prentice, Barbour & Co.,

whether a partnership or a tenancy in common, it is not necessary to determine, for in either event the remedy would be in equity and not at law.

In drawing the issue the court mentioned these two ejectment suits, but only for the purpose of showing, that the issue was to take their place on the trial list. It was understood to be only an issue from the equity case. The ejectment suits had nothing to do with the trial of this issue.

The verdict of the jury is merely advisory, and may be, indeed should be, disregarded by the chancellor, whenever it fails to satisfy his conscience that he can make that as his own declaration of fact, which the jury have made theirs: Baker *v.* Williamson, 2 Barr 116; Commonwealth *v.* The Judges, 4 Id. 303; Johns *v.* Erb, 5 Id. 237; Brawdy *v.* Brawdy, 7 Id. 159; Moore *v.* Small, 7 Harris 467; Scheetz's Appeal, 11 Casey 94; Dale *v.* Roosevelt, 6 Johns. 256. [See Messimer's Appeal, *ante*, p. 168.—REP.]

Mr. Justice GORDON delivered the opinion of the court, January 5th 1880.

The master was undoubtedly right when he pronounced this an ejectment bill and recommended its dismissal. The principal prayer, the one on which all the rest depend, is the fourth, which is as follows: "That the ownership, possession, care and control of said leaseholds, the profits therefrom and the products thereof, be decreed to the plaintiff, to the extent of his purchase of the interest of the said George S. Long therein, and that the possession thereof be surrendered to him, and that the defendants be restrained and enjoined from in any way interfering with or disturbing the same." The plaintiff thus requires the court to determine the title to these leaseholds in his favor, and to put him in possession thereof. This, however, is what is ordinarily accomplished by an action of ejectment followed by a writ of *habere facias possessionem.* This, then, as is said in the case of the North Pennsylvania Coal Co. *v.* Snowden, 6 Wright 488, is "what is sometimes called an ejectment bill, and is demurrable, and would be, even though it had charged that the defendants had got the title deeds, and had mixed boundaries as well as prayed for a discovery, possession and account." But the account prayed for in the bill under consideration, is but incidental to, and dependent upon the determination of title; the title must first be settled in favor of the plaintiff, or he can have no account. There is no doubt, as was held in Wilhelm's Appeal, 29 P. F. Smith 120, but that, where an account is the primary subject of the bill (as between tenants in common), title, incidentally occurring, may be disposed of. But even in such case, a chancellor will not interfere if the complainant's title be denied until he has established it at law: Coal Co. *v.*

Snowden, *supra*. It is true, the complaint is that Mrs. Long obtained her title by fraud upon the creditors of her husband; but what of that? The plaintiff is seeking to establish his own title, which is disputed and denied; her title may be worthless, but she has possession, and until he proves, by an action at law, that he has the right to that possesion, by virtue of a good title, she cannot be disturbed.

But the plaintiff himself does not seem to have relied altogether upon his bill, for he brought two actions of ejectment; one for the McDermott and the other for the Jamison lease. So, by the submission, it would appear that the determination of these suits was regarded as of importance. But upon this branch of the case it is unnecessary for us to dwell, for the submission itself is the material point of this controversy, and, though the court held differently, the contention was in fact settled by the verdict. The terms of that submission are as follows: " In the equity case between these parties, and the two ejectment cases between the same parties, by consent of counsel, the court direct an issue between R. L. Brown, as plaintiff, and George S. Long and wife, defendants, to supersede and take the place of the ejectment cases, for trial next week, and to be for trial next week; in which issue plaintiff shall allege that the undivided half of the leaseholds, described in said bill, and writs of ejectment, was at the time of his purchase thereof, at sheriff's sale as the property of George S. Long, owned by said George S. Long and not by his wife, Mary Ann Long; and that the title thereto, held in the name of Mary Ann Long, was fraudulent and void as to the creditors of George S. Long, being held in her name with intent to delay, defraud and hinder the creditors of George S. Long. And defendants shall deny said allegations, and aver that said George S. Long, her husband, had no interest thereon. The determination of said issue to decide the issues of fact, raised in the bill in equity, as to the title of said leaseholds; and the costs of the bill to follow the verdict in the issue now ordered." It will be observed, that this issue was to take the place of the actions of ejectment, and that its determination was to decide the question of title raised in the bill. In other words, it was to do precisely what the trial of the actions at law would have done; settle the preliminary question of title, without which the bill could not proceed. It follows, that this was a submission at common law, and not a mere issue for the information of a chancellor. This becomes all the more obvious when we reflect that, without the consent of the parties, the judge could not have ordered an issue embracing the actions of ejectment. This was a matter for the parties themselves; it was their submission and it was binding upon them. They thereby agreed that the verdict should settle the title to the leaseholds, and the rendition of that verdict was a determination of the actions of ejectments

[Long's Appeal.]

in favor of the defendant, and it required no intervention of the chancellor to give it effect.

> It is now ordered and decreed that the decree of the court below be reversed and set aside; that the plaintiff's bill be dismissed with costs.