# Leininger's Appeal.

1. A court of equity will interfere to prevent entry on unimproved land, or actual or threatened waste thereon, under a claim of right, only where it clearly appears that the remedy by ejectment and estrepement is inadequate.

2. Where a party acts or proposes to act in relation to land, under an assertion of right, it must be a peculiar case which will justify an injunction against his doing that which, if his claim be well founded, would be the legitimate exercise of a right.

3. A. claimed to be the owner in possession of a large tract of land. B. entered on an unimproved part thereof, under claim of title, cut timber, sunk shafts and began the systematic mining of coal thereon. A. afterwards filed a bill in equity praying an injunction.

   *Held*, that, in the absence of circumstances showing imminent peril requiring a remedy speedier than any available at law, a court of equity would not assume jurisdiction.

[Leininger's Appeal.]

April 21, 1884.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Court of Common Pleas of *Schuylkill county :* Of January Term, 1884, No. 317.

This was an appeal by John P. Leininger et al. from a decree of said court sustaining a bill in equity filed by the Summit Branch Railroad Company against the appellants, and granting an injunction restraining them from entering upon, cutting timber and conducting mining operations for coal upon a certain tract of land, to which both parties claimed title. The plaintiffs claimed that at the time of defendant's entry they had possession. An answer was filed to the bill, and the cause was referred to a Master, (S. H. Kaercher, Esq.) who found the facts to be as follows :—

The testimony establishes: That the Summit Branch Railroad Company, a corporation duly incorporated under the laws of Pennsylvania, acquired the title, in the year 1864 and 1865, to thirteen contiguous tracts of land, containing about thirty-two hundred acres, situate in the townships of Williams and Wiconisco, in the county of Dauphin, and in the townships of Hegins and Porter, in the county of Schuylkill, and State of Pennsylvania, and that the deeds and conveyances have been entered of record. That the said tracts of land are mainly coal land and have been held, used and claimed as one body. The exterior lines of this body of land were marked on the ground and painted about the year 1867, and the plaintiff has always claimed up to the lines so marked, and has not regarded the interior lines of the several tracts. That the plaintiff has cut timber from time to time upon this body of land in places most convenient to its operations, and has opened roads upon the said lands. That on the said body of land in Dauphin county the plaintiff has built a railroad, sunk slopes, erected engine houses, dwelling houses for its tenants, saw mills, machine shops for colliery repairs, and a carpenter and blacksmith shop. That the Williamstown Colliery is one of the largest coal operations in America, and is located upon this body of land, north of the town of Williamstown, and about one mile from the Schuylkill county line. That coal has been mined and continuously shipped from the said colliery since the year 1865. That one of the tracts of land forming the northeastern part of the body of land belonging to the plaintiff (surveyed on the 9th day of September, 1794, in pursuance of a warrant to John Lengel, dated the 3d day of April, A. D. 1794, and patented on the third day of March, 1795, to James Wilson), is situate partly in Dauphin county, and partly in Hegins township, Schuylkill county. That the east, north, and part of the west lines of the John

Lengal tract form in part the exterior boundary of the body of land, claimed by the plaintiff. That the lines of this tract were opened about the year 1879. The Caspar Lengel tract adjoins the John Lengel on the east, and belongs to the Philadelphia & Reading Coal and Iron Company, and the line dividing the two tracts had been painted by the said company. That the lines of the John Lengel tract, as claimed by the plaintiff have never been changed. The John Lengel tract is one of a batch of surveys known as the "Wilson surveys," and the north line has been located upon the ground, as claimed by the plaintiff, by the running of other lines of the said surveys from a point further east, and marks on the said line counted back to the date of survey. Upon the southern portion of the Lengel tract in Dauphin county, and north of the Williamstown Colliery, the said plaintiff opened the Bear Valley Colliery, a tunnel three quarters of a mile in length having been driven through the Big Lick Mountain to the Lengel tract through which to carry the coal from the said colliery to the Williamstown Colliery and thence to the railroad at Williamstown. The said tunnel was commenced about the year 1860, and completed about the year 1873, at the cost of one hundred and fifty thousand dollars and upwards. The Bear Valley Colliery is situate about three hundred yards from the Schuylkill county line, and was opened to develop the coal in the veins upon the John Lengel and adjoining tracts of land in Schuylkill and Dauphin counties. Coal has been shipped for several years from the said colliery, and the improvements consist of a compression house, a blacksmith shop and small office. To the north and east of the Bear Valley Colliery, and upon that portion of the John Lengel tract, lying in Schuylkill county, the said plaintiff built two houses in the year 1864, and one in the year 1869, which houses have been continuously occupied by its tenants. The said houses are located south of the middle of the tract, and the North Mountain lies between the said houses and the north line of the tract. A saw mill was built on the tract in 1864, and operated by the plaintiff for a number of years until its destruction by fire. The Summit Slope Colliery has been opened and operated by the plaintiff upon the tract, west of the John Lengel tract, and within its lines as originally surveyed in 1794. The part of the Lengal tract, lying in Schuylkill county, has been assessed to the plaintiff as unseated land.

Upon the "straddle" of the North Mountain, and lying in Schuylkill county are located two tracts of land; one surveyed on the 26th day of June, 1830, on a warrant dated, 14th July, 1829, to John Huber, and the other surveyed on a war-

rant dated the 13th day of June, 1829, to William Hoch, and the said tracts cover the northern half of the John Lengel tract as originally surveyed and located in 1794. An interest in the said tracts was purchased in 1872, by William Leininger and Isaac Rhoads, two of the defendants, from John Huber, and the land assessed to William Leininger was sold by the Treasurer of Schuylkill county, on the twelfth day of June, 1876, for the non-payment of the taxes for the years 1874 and 1875. The title acquired by William H. Dewees, by the sale for taxes has become vested in William Leininger, Isaac Rhoads, James J. Dull, and Mrs. F. P. Dewees. The taxes upon the John Lengel tract assessed to the plaintiff in the warrantee name of John Lengel for the years 1874 and 1875, were paid to the Treasurer of Schuylkill county on the 9th day of June, 1876. The houses upon the Lengel tract and north of the Bear Valley Colliery are outside of the lines of the Hoch and Huber surveys. The plaintiff, since the year 1865, has exclusively cut and used the timber upon the body of lands claimed by it, and was not interfered with until the month of October, 1879.

In September, 1879, William Rhoads, acting for Isaac Rhoads and co-owners, made a lease to John P. Leininger for twenty years, of the veins of coal upon the Hoch and Huber tracts of land for the purpose of erecting a colliery thereon. On the sixth day of October, 1879, the said Leininger entered upon the Huber tract, and within the lines of the Lengel tract, as claimed by the plaintiff, and commenced to sink a slope on the northeast corner of the tract, and to build a breaker and a shanty. The said Leininger and his employees have cut timber, dug shafts, sunk a slope, and mined and carried away coal from the premises. The said Leininger has erected upon the said tract a small breaker and shanty and expended in the development of the veins of coal, and the erection of improvements the sum of fourteen hundred and ninety dollars and upwards, up to the seventh day of February, 1880, when the motion to continue the preliminary injunction was argued. The superintendent and agents of the plaintiff had no knowledge of the entry of the said Leininger upon the Lengal tract, and of their acts thereon until the 22d day of November, 1879, when information was given to the general superintendent. The plaintiff had in its employ an officer known as "Bush Ranger," whose duty it was to go over the lines of the body of lands and protect the land from trespassers. This officer went upon the lines of the Lengel tract in August, 1879, and again in latter part of September or early part of October, 1879, and on those visits there were no signs of any digging or shafting for coal upon the northeastern part of the tract. On the 22d day of No-

10 OUTERBRIDGE.—26.

vember, 1879, the said officer went upon the Lengel and found George Leininger and others present and engaged in the building of a frame breaker structure, and, in accordance with directions received from the general superintendent, notified them that they were trespassing upon the plaintiff's property, and that they should quit work. A frame shanty had been built and a winch had been placed in position to hoist coal. On the 24th of November following, William Leininger, Jonathan Williard, Lewis Huntzinger, and others present, as employees, were notified to leave the land as they were trespassing. On the 10th day of December, 1879, John P. Leininger was notified to leave and that he was trespassing. The defendants and others notified claimed to be acting under William Leininger and James J. Dull, as owners of the land in dispute, and refused to leave, but continued to dig and mine coal.

The testimony does not establish, as claimed by the defendants, any negligence on the part of the plaintiff's superintendent in giving notice of a claim to the land, nor that its agents stood by and permitted the expenditure of money in erecting improvements before warning the defendants. The expenditure after notice to George Leininger on the twenty-second day of November, 1879, was at the risk of the defendants. After the notices were given to the several defendants, as they were seen upon the land, a delay until the 19th day of January, 1880, in the examination of the titles, preparation of bill and affidavits was not an unreasonable one.

The plaintiff, in the year 1868, purchased from John Huber fifteen acres of the Huber tract of land, and three acres of the Hoch tract, and these purchases embraced no portions of the said tracts within the lines of the John Lengel tract, as previously marked and claimed by the plaintiff and as originally surveyed. This is the only testimony upon the subject, and does not establish any acquiescence of the plaintiff in the title of the defendants to the Hoch and Huber tracts. The plaintiff has shown title to a number of tracts of land, occupied and claimed as a body for fourteen years and upwards, with the exterior marked upon the ground. The actual possession of one of such tracts of land, and the erection of houses, valuable improvements, and collieries for the development of coal, would extend the possession to the whole of the land, held as a body, up to the marked lines to which claim was made. This principle, settled by authority, under the facts in this case establishes the possession of the plaintiff of the John Lengel tract, even if there were no improvements upon it. But the evidence shows that there was an actual possession of the Lengel tract in the plaintiff, at the time of the entry of the defendants and the cutting of timber and digging and shafting

for coal.   There was a colliery in active operation upon this tract, and three houses occupied by the tenants of the plaintiff for more than twelve years.   Roads had been cut upon various parts of the tract ; the lines of the tract were marked upon the ground, and claim made to them.   There was no entry by the defendants or their predecessor in title upon this tract until October, 1879.   The Master can find no authorities to sustain the position that the owner of an older warrant and survey having entered upon a part of the land, and erected improvements and marked his lines, is limited in his possession by the lines or interference of junior surveys.   The fact that the John Lengel tract in Schuylkill county was assessed to the plaintiff as unseated land is no proof that the plaintiff did not have possession of it.   This was an act of the assessor, and not of the plaintiff.   The plaintiff's title to the land would draw to it the possession, which is to be deemed actual for all purposes of remedy, until interrupted : Miller v. Shaw, 7 S. & R., 134; Mather v. Trinity Church, 3 S. & R., 513.

The plaintiff having had the actual possession of the John Lengel tract, covering the land in dispute, the entry of the defendants upon that possession was an intrusion, and this brings us to the consideration of the main question involved, as to the jurisdiction of a court of equity to restrain the defendants by an injunction.

The Master, after referring to authorities, and relying especially upon Munson v. Tryon, 6 Phila. Rep., 395, and City of Philadelphia v. Brosius, 2 Schuylkill Leg. Rec., 317, reported that an injunction should issue restraining the defendants from entering upon the tract in question, or interfering with the possession of the complainant, until the right to possession of the premises shall have been established in a suit at law.

Exceptions filed to the Master's report were overruled in an opinion by PERSHING, P. J. (BECHTEL and GREEN, JJ., did not sit, and took no part in the decision of the cause), and a decree was entered as reported by the Master, without prejudice to the right of defendants to bring an action at law.   The defendants took this appeal, assigning for error, inter alia, the said decree.

*F. P. Dewees* (*B. W. Cumming* with him), for the appellants.—There was no jurisdiction in equity.   The defendants had been in exclusive possession for four months prior to the filing of the bill; plaintiff's prior claim amounted at best to constructive possession.   The decree is equivalent to a verdict in ejectment, with this addition, that not only are defendants ousted from their possession, but their property personal as well as fixtures is retained by complainants.   The bill is noth-

ing more than an attempt to obtain through the decree of a chancellor the possession and enjoyment of a certain tract of land from which complainant claims it has been deforced. "It is what is sometimes called an ejectment bill, and is demurrable:" North Penn. Coal Co. *v.* Snowden, 6 Wright, 489; Messimer's Appeal, 11 Norris, 168; Barclay's Appeal, 12 Norris, 54.

*D. C. Henning,* for the appellee.—The jurisdiction of equity to restrain waste and threatened trespass, at the suit of the owner in possession is undoubted: Munson *v.* Tryon, 6 Phila. Rep., 395; Miller *v.* Shaw, 7 S. & R., 134; Mather *v.* Trinity Church, 3 S. & R., 513; Bare *v.* Gratz, 4 Whart., 213; Allison & Evans' Appeal, 27 P. F. S., 221; Masson's Appeal, 20 P. F. S., 30; Stewart's Appeal, 6 P. F. S., 422; Johnston *v.* Hyde, 10 C. E. Green, 454; Southmayd *v.* McLaughlin, 9 C. E. Green, 181; West *v.* Walker, 2 Green Ch., 279; Cornelius *v.* Post, 1 Stock., 196. The Act of 1836 gives equity jurisdiction for "the prevention or restraint of the commission or continuance of acts contrary to law and prejudicial to the interests of the community, *or the rights of individuals.*"

Mr. Justice TRUNKEY delivered the opinion of the court, May 19, 1884.

The plaintiff claims that for many years it has owned and had actual possession of thirteen contiguous tracts of land, containing thirty-two hundred acres, situate in the counties of Dauphin and Schuylkill. Upon the land it built houses, saw-mills, cut timber, constructed railroads, and carried on extensive mining operations. It has three colleries, and improvements necessary and convenient for mining coal. The greater part of the land is an unenclosed and unimproved wilderness.

One of the tracts was warranted and surveyed in the name of John Lengel in 1794, and on the south end of that tract the plaintiff has a colliery. Over fifty years ago two small tracts were warranted and surveyed, one in name of John Huber, the other in name of William Hoch, and these are contiguous and cover the greater part of the north half of the John Lengel tract. The defendants claim that the Huber and Hoch tracts were sold for taxes, and that a good title for said tracts by divers conveyances has been vested in themselves. Their entry was on one of these tracts, and there the acts were done which are complained of in the bill. No improvements had been made on these tracts, the north half of the John Lengel tract, prior to the defendants' entry. They commenced work on the 6th of October, 1879, and before the bill

was filed had cut timber, erected a breaker and shanty, dug shafts, sunk a slope, and mined and carried away coal. The Master finds that the plaintiff had no knowledge of the entry by defendants until November 22, when its "bush ranger" went and found them at work building a frame breaker. Hoffman, the plaintiff's engineer, heard of the defendants' operations about the middle of November; he informed the superintendent who sent Mason, the bush ranger, and he gave notice to the defendants to quit on November 22—the bill was filed the 19th of January following.

All the plaintiff's improvements were in Dauphin county. The land claimed by defendants was wild land, situate in Schuylkill county, assessed as unseated. It is within the marked lines of the land claimed by the plaintiff, and, doubtless, the plaintiff had such possession of the whole as was good against a mere intruder, and if continued uninterrupted would ripen into a title under the Statute of Limitations. But if the defendants had good title they were not trespassers. Were they sued for the alleged trespass and waste, upon showing good title in themselves they would defeat the action. If they have no valid title the law gives a full and adequate remedy for their trespass, unless the injury is irreparable. For cutting timber trees and converting them to their own use, trespassers are liable to pay treble the value thereof. A plaintiff in ejectment may have a writ of estrepement to prevent the mining of coal, and the proceedings respecting such writ are regulated by statute. In this case, by bringing one suit in ejectment the plaintiff will be entitled to as effective remedy to stay waste as an injunction in equity. If confined to the law courts the plaintiff has no occasion for a multitude of actions to protect its rights.

Courts of equity may enjoin where the value of the inheritance is in jeopardy, or irreparable mischief is threatened in relation to mines, quarries or wood land. Injunctions are not often granted against a defendant in possession, yet they are not always denied. If the defendant is out of possession and enters or threatens to enter upon lands in possession of the plaintiff to commit acts in the nature of waste, equity is more ready to interfere. When a defendant acts or proposes to act under an assertion of right, it must be a peculiar case which will justify an injunction against his doing that which if he be the real owner would be the legitimate exercise of a right. It is not in every case an insuperable bar to an injunction, that the defendant claims title and disputes the plaintiffs' right. The court must judge whether the circumstances of the case make it necessary to interfere by injunction. What the peculiar circumstances must be, is impossible to define.

These principles were expressly recognized by Justice STRONG in Munson•*v.* Tryon, 6 Phil. R., 395, and he held that the circumstances of that case were so peculiar as to move the chancellor to act. He also remarked an increasing disposition in courts of equity to prevent waste or partial destruction of property, even though done or threatened under an assertion of title. But since that decision, as well as before, however it may be elsewhere, the courts of this state have no increasing disposition to impinge the right of trial by jury in the granting of injunctions to prevent a party who claims title, doing that which he has a legal right to do, if his title is valid, unless there are special reasons why he should be enjoined. Had the settled principles recognized in Munson *v.* Tryon been heeded rather than the observations relative to a growing tendency in courts of equity to grant injunctions against trespass in the nature of waste, the decree in the pending case would probably have been different.

Here the defendants claim title to a tract of land long ago warranted and surveyed and the lines marked. It is entirely outside the actual occupancy of the plaintiff, but not of its possession before the entry by defendants. The plaintiff, with knowledge that the defendants had taken possession and were preparing to mine coal, did not invoke injunction for nearly two months, nor until after the mining had been begun. There was no imminent peril requiring a speedier remedy than given at law. The evidence fails to show danger of irreparable injury, unless relief be granted in equity; nor did the Master find any unusual or peculiar circumstances to distinguish this case from an ordinary taking possession of unimproved land under a good faith assertion of title, when the possession had previously been in an adverse claimant. It does not appear that the defendants' claim of title is in bad faith—the nature and limited extent of the improvement indicate the open assertion of their right rather than an attempt to carry away the body of coal under a false claim. If the defendants' title is good their entry was lawful, and they had the right to continue in possession. What they did and were doing, if the real owners, was the legitimate exercise of their right, and we discover nothing peculiar in the case to justify an injunction, the effect of which was to turn them out.

Decree reversed, and bill dismissed at the costs of the appellee.