193    641
30 SC ¹362

193    641
225    4235

# North Shore Railroad Company *v.* Pennsylvania Company, Lessee of and operating the Pittsburg, Fort Wayne and Chicago Railway, Appellant.

*Equity—Jurisdiction—Title to land.*

A court of equity, in the absence of fraud, has no jurisdiction to deprive a party of his legal title to land by decree; that is solely within the jurisdiction of a court of law.

*Equity—Title to real estate—Pleading—Demurrer—Jurisdiction.*

Where a bill in equity raises a question of title to real estate, the proper pleading to jurisdiction is by formal demurrer immediately on service of the bill, but where there is clearly no jurisdiction, the objection may be made at any time before or at the final hearing; where it is doubtful it will not be entertained at final hearing, but where it has been raised in the answer, on the motion to dissolve the preliminary injunction, and at the final hearing, and in every case disregarded in the court below, the question can be raised in the Supreme Court, although a formal demurrer has not been filed on service of the bill.

The Supreme Court is not disposed to encourage the trial in equity of actions of which courts of law have jurisdiction under the constitution.

*Equity—Jurisdiction—Railroads—Title to land.*

The Supreme Court will dismiss a bill in equity filed by one railroad company against another where the bill clearly raises a question of title to land, and the defendant, although not filing a formal demurrer, has raised the question of jurisdiction at every stage of the case from answer to final hearing.

Argued Oct. 17, 1899. Appeal, No. 152, Oct. T., 1899, by defendant, from decree of C. P. Beaver County, Sept. T., 1896, No. 5, on bill in equity. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN, FELL and BROWN, JJ. Reversed.

Bill in equity for an injunction.

The facts are fully stated in the opinion of the Supreme Court.

The court in an opinion by WILSON, P. J., entered a final decree directing the defendant company to remove the improvements which it had made on the land in dispute, and enjoining it from interfering with the plaintiff's possession of the same.

*Error assigned* among others was the decree of the court.

*John M. Buchanan*, with him *Wm. A. McConnell*, for appellant.—We are in possession of this land under deeds made to us in 1888 and 1889, and the plaintiff, out of possession, setting up alleged rights of the state, is attempting to take it through the assistance of a court of equity. We are clearly entitled to have our rights determined first by a jury, and we cannot be deprived of our land in any other way : Penna. Canal Co. v. Middletown & Harrisburg Turnpike Co., 11 Pa. C. C. R. 582; Washburn's App., 105 Pa. 480; Leininger's App., 106 Pa. 398; Duncan v. Hollidaysburg & Gap Iron Works, 136 Pa. 478.

The question of jurisdiction was raised in time : Potts v. Philadelphia & Reading R. R. Co., 7 Montgomery County Law Rep. 13; Leininger's App., 106 Pa. 398; Scranton, etc., R. R. Co. v. Del. & Hudson Canal Co., 1 Lack. Jur. 113; Lewis v. Cocks, 23 Wallace, 466; Adams's App., 113 Pa. 449.

*Richard S. Holt*, with him *J. R. Martin* and *A. M. Neeper*, for appellee.—The court had jurisdiction : Bank v. Loeffert, 184 Pa. 164; Edgett v. Douglass, 144 Pa. 95; Evans v. Goodwin, 132 Pa. 136; Adams's App., 113 Pa. 449.

When the court has jurisdiction of the subject-matter it has jurisdiction to decide a question of title which may arise : Wilhelm's App., 79 Pa. 141.

OPINION BY MR. JUSTICE DEAN, December 30, 1899 :

The Pittsburg, Fort Wayne and Chicago Railway Company, lessor of the Pennsylvania company, by act of February 8, 1865, was authorized, whenever it should find it to be necessary for the safety of the public, or for reasonable cause, to change the location and grade of its road in Beaver county. Acting under this statute the Pennsylvania company, lessee, in the year 1889, resolved to change the grades and curves of its road through the borough of Rochester, and to that end procured from councils the proper ordinances authorizing the changes of location, upon certain streets and alleys ; also, the change of two bridges, one at Main the other at Madison street; also the right to build an under grade crossing at McKinley's Run. The company then commenced to acquire such real estate in fee as its engineers deemed necessary for the accommodation of a

roadbed adapted to the proposed change of grade; also immediately commenced costly excavations, and by the end of the year 1890 had expended about $20,000. It was the intention of the company to lay two additional tracks between the old line and the west bank of the Beaver river, to avoid disturbing a retaining wall which supported a declivity next to the old line of track; the strip between the existing track and the river was of irregular width, and was owned in lots by several private holders; believing these lots extended to the river bank, the company purchased by proper conveyance from the owners, all between the Rochester toll bridge on the north to the Cleveland and Pittsburg Railroad on the south, and between its tracks and the river; on account of the financial stringency about that time, work was delayed, or at least not vigorously prosecuted, during the years 1893 and 1894. In the year 1896 the North Shore Railroad Company was chartered under the general railroad law of 1868 and its supplements, to construct a railroad from a point in New Sewickley township, Beaver county, to the borough of Beaver Falls in same county, a distance of something more than six miles. A survey was made by this company's engineers, the ground staked and the location adopted by its board of directors; this location placed the roadbed on the land between the old tracks and the river, which, the Pennsylvania company alleged it had purchased, and on which it had located its additional tracks. When the latter company attempted to proceed with its improvements the plaintiff, averring that so much of the land as it had appropriated belonged to the commonwealth, and that the Pennsylvania company had no possession or right to the same under its deeds of purchase, filed this bill to restrain it from entering upon the land or laying tracks thereon. The court below granted a preliminary injunction which after hearing it dissolved; the defendant company in the mean time went on with its work, expending over $100,000. The court proceeded to final hearing, and then made the injunction perpetual against defendant, and ordered it to remove its improvements and temporary work tracks. From that decree we have this appeal. The main allegation of appellant, in its assignment of error, is that a court of equity took jurisdiction of a question which could only be determined by a trial at law of the title to the land; and that the bill must be dismissed because it is an ejectment bill.

It is as clear as any fact can be, both from bill and answer, that the issue turns on the question, Who owns this land? The defendant claims it to the bank of the river, under its deeds, which, constructively, had put it in possession eight years before, and it may be fairly presumed, that from that time it was, for railroad purposes, in actual possession, because it commenced work immediately, and the suspension of the work temporarily would be no abandonment of the actual occupation for railroad purposes; the officers and employees of the company were not bound to live upon it during a temporary stoppage of the work. The learned judge of the court below concedes the case turns on the question of title to the land; he says in his opinion, "The question for consideration then is whether the Pennsylvania company or its lessor company owns the land occupied by the said track A., B." And in his twelfth and last finding of fact he concludes, "And the title to said land is not in the Pennsylvania company or its lessor." And in his discussion of the evidence, throughout, he clearly bases his findings of fact on the construction of the descriptions in the various grants to the defendant, and attempts to show that the lots did not reach the river, but stopped short of it at Island Lane. A court of equity, in the absence of fraud, has no jurisdiction to deprive a party of his legal title to land by decree; that is solely within the jurisdiction of a court of law. This point has been so often decided that any citation of authority is scarcely necessary. We call attention, however, to Long's Appeal, 92 Pa. 171, Leininger's App., 106 Pa. 398, Ferguson's App., 117 Pa. 426, Duncan v. Iron Works, 136 Pa. 478, and Penna. Canal Co. v. Turnpike Co., 11 Pa. C. C. R. 582.

But it is argued by appellee, the question of jurisdiction ought to have been raised by demurrer. If there has been supineness in raising the question of jurisdiction, in a doubtful case, the court will not entertain it. And generally, the proper pleading is by formal demurrer immediately on service of the bill. Here the defendant did not formally demur, but it set out in its answer plainly its defense resting on its legal title, thus: "Answering the fourth paragraph of the plaintiff's bill of complaint, the defendant avers that on or about September 13, 1896, it began the construction of a switch or branch road within the borough of Freedom in said county, from its own

tracks to the Ohio river, on and over land previously acquired by it and owned by it in fee, and upon land which is necessary for the successful operation of the defendant's road. Also, that on or about the date aforesaid it began the laying of a construction track within the borough of Rochester in said county, along its own lines, and between the same and the Beaver river, upon land acquired by it prior to the year 1893, owned by the defendant company in fee, and necessary for the successful operation of the said defendant."

Then, on motion to dissolve the preliminary injunction, the court was asked by formal motion in writing, presented by defendant's counsel, to dissolve the injunction because the court had no right to interfere by injunction with its operations upon land owned by it in fee. Then at final hearing the court was requested as matter of law to find that " this (a court of equity) is not the court in which to try an action of ejectment," and then counsel cited authorities to sustain the point. The answer in its averments is a demurrer to the jurisdiction although not so called ; the point, on motion to dissolve the preliminary injunction, is a plea to the jurisdiction, and so is the request for finding of law at final hearing. But, in his certificate appended to the record, the learned trial judge disposes of it as follows : " October 13, 1899, I, JAMES SHARP WILSON, president judge of the court of common pleas of Beaver county, before whom the above stated cases were tried, hereby certify that the defendants therein, on the argument of the motion to dissolve the preliminary injunction and each hearing thereafter, objected to the jurisdiction of this court to determine the question of title to the land in controversy in this matter."

Where there is clearly no jurisdiction the objection may be made at any time before or at final hearing ; where it is doubtful it will not be entertained at final hearing; but where it has been raised at every stage of the case from answer to final hearing, and disregarded in the court below, the question can be raised here, although a formal demurrer has not been filed on service of the bill. We think there is manifest want of jurisdiction, and further, that, even if it were doubtful, defendants, as to urging it, were not silent. We are not disposed to encourage the trial of actions of which the law courts under the constitution have jurisdiction, in courts of equity. And there

is no hardship or irreparable injury to plaintiff in this case by being turned over to another court. As yet it has not built a mile of track, nor in actual construction, has it expended any money. Its attitude here, in fact, is that of a protector of the commonwealth, to prevent the spoliation of her land by another corporation, and not alone that of demanding its own right. This attitude can be just as effectively maintained before a court and jury.

The decree is reversed, perpetual injunction is dissolved, and the bill dismissed at costs of appellee.