# Harlan *against* Moore.

" I give and devise to my son W. his heirs and assigns, the houses, mills and races which he now possesses, together with twenty-four feet from the mill to the dam to enable him to repair the race at pleasure, together with full and free liberty to keep the dam in repair, so as to furnish water to the mill devised to him," &c. By a subsequent clause in his will, the testator devised the land through which the race and twenty-four feet were to his grand-son, without reservation: *Held*, that the devise to the son of the twenty-four feet along the race, vested in him a fee simple estate in the soil, and not a mere easement.

ERROR to the special court of common pleas of *Cumberland* county. (Durkee, president).

George and John Harlan against William Moore and others.

The plaintiffs in error were the plaintiffs below, and brought an action of trespass against the defendants, for entering the close of the plaintiffs, pulling down their fences, and destroying their corn. Defendants pleaded not guilty, *liberum tenementum* and a license. Replication, novel assignment and no license.

To support the issue on their parts, the plaintiffs gave in evidence the will of John Moore, dated the 15th of August 1822, probate the 8th of January 1828, which contains the following clauses applicable to the case:

" 3d. I give and devise to my son William Moore, his heirs and assigns forever, the houses, mills and races which he now possesses, together with twenty-four feet from the mill to the dam, to enable him to repair the race at pleasure, together with full and free liberty to keep the dam in repair, so as to furnish water to the mills devised him, together also with two hundred and one acres, and allowance of land as contained in a survey marked B, made by William Wheeler, Esq. and hereunto annexed, and which is to be considered as forming a part of this my last will and testament, as though the same had been particularly recited herein; reserving nevertheless, to my grand-son John Galbraith, his heirs and assigns

[Harlan v. Moore.]

forever, the right and privilege to erect and keep in repair, a bridge or bridges across the race, between said mills and dam, when and where he or they shall think proper, reserving also to my said grandson, John Galbraith, his heirs and assigns forever, the right to use so much of the water in said race as may be necessary to carry on the distillery, and to water sufficiently twenty acres of meadow.

" 4th. I give and devise to my grand-son, John Galbraith, his heirs and assigns forever, my mansion-house, together with the barn and out-houses attached thereto, together also with two hundred and fifty-nine acres and fifty-nine perches, strict measure of land as contained in a survey marked A, made by William Wheeler, Esq. and hereunto annexed, and which is to be considered as forming a part of my will, as though the same had been particularly recited therein, being part of my mansion tract and marked No. 1 in the survey last referred to; and I do hereby will and direct that my grand-son, John Galbraith, shall and is to pay to my executors hereinafter named, the sum of fifteen hundred dollars, to be paid in the following manner, to wit: two hundred dollars in one year after my decease, and two hundred dollars yearly and every year thereafter, until the said sum of fifteen hundred dollars shall be fully paid, which said sum of fifteen hundred dollars is to be appropriated by my executors to the payment of debts and the legacies hereinafter bequeathed."

The mill race passes through the land devised as above to John Galbraith, his heirs and assigns.

Admitted, that for the purpose of repairing the race, the fence on the south side of the race, for a distance of twenty-four feet, was removed by the defendants, and that the damage which the plaintiffs sustained, if entitled to recover, was eight dollars.

Lease of Francis Hutchinson, (husband of the widow of John Galbraith,) and the guardians of the minor children to the plaintiffs, dated the 3d of April 1833.

The cause turned upon the construction of the will of John Moore, whether it vested a fee simple in the soil of the twenty-four feet in William Moore or only an easement.

The plaintiff requested the court to charge the jury upon the following points:

1. That the will of John Moore does not vest a fee simple estate in William Moore, to the land on the south side of the head race, twenty-four feet in width, so as to entitle him to the exclusive possession of the same. And if the jury believe, that he and the other defendants tore down the fence of the land in possession of the plaintiffs, and took exclusive possession of the said twenty-four feet width of land, and fenced the same off for their own use, by so doing they became trespassers, and the plaintiffs are entitled to recover.

2. That the true construction of the will of John Moore, deceas-

IX.—2 F*

ed, in reference to the twenty-four feet in dispute, is that the fee-simple estate is given to John Galbraith; and that William Moore is entitled to the easement of the right to use the land for the purpose of repairing his race; and such right vested in William Moore did not justify him in tearing down the plaintiff's fence, and building a fence parallel to the race, twenty-four feet from it, and thus taking exclusive possession of the ground along the race.

*Durkee*, president, answered these questions in the negative, being of opinion that the devise was of the fee and not a mere easement.

*Biddle* and *Watts*, for plaintiff in error.
*Alexander*, for defendant in error.

The opinion of the court was delivered by

Sergeant, J.—We think the true construction of this will has been given to it by the court below, that William Moore took, by the devise to him, a fee simple in the twenty-four feet from the mill to the dam; and that the phrase, "to enable him to repair the race at pleasure," is not sufficient to convert the devise into a mere easement, but is rather to be taken as an expression of the reason why the gift is made. As William Moore was, by the will, constituted the owner of the mill and race, it was proper he should have a control over the ground bordering upon the race, and the testator seems to have used apt words to give him the soil itself. Though a different construction might perhaps be given, yet it would be one founded rather on conjecture and implication than on the direct and legal consequences of the terms used, and is not absolutely necessary to render the will harmonious and consistent throughout. For we find that the testator, intending by a subsequent devise to give to his grandson, John Galbraith, the tract comprehending the ground through which the race runs, takes care, at the time of the devise to his son William Moore, to reserve to his grandson the right to erect and keep in repair one or more bridges across the race, and also to use as much of the water in the race as should be necessary to carry on the distillery and to water sufficiently twenty acres of meadow. These are strictly privileges or easements, conveyed by appropriate language, and which could not take effect as such unless the property, out of which they were to be enjoyed, vested in the defendant, William Moore. The testator unquestionably gives William Moore a fee simple in the race through the grandson's tract; and there appears to be no reason why he should not likewise give him in fee simple the twenty-four feet immediately bounding it. The race, it appears, was constantly in need of repairs, and under these circumstances it could not be of great importance to the grandson whether the son had the fee simple in the adjoining ground, or only a right to pass and repass along and to occupy it whenever repairs were necessary. At any rate, we think

the language of the devise is too strong to be got over, even if all the objects of the will could be accomplished, (as perhaps they might,) by holding that the defendant acquired by the devise merely an easement. It has been suggested that, by this construction, the grandson's distillery is thrown upon the son's ground. It is stated by a witness to have been situated ten or fifteen feet from the race on the south side. If the twenty-four feet embraced equally both sides of the race, then it would seem the distillery lies out of it. If it did not, as to a small portion of it, yet we think the distillery is clearly devised to the grandson by this will, and so much of it as may happen to lie within the twenty-four feet must be considered as devised to him in the same manner as the rest, in order to render the will consistent throughout.

Judgment affirmed.