# Pennsylvania Coal & Coke Company v. Jones, Appellant.

*Equity—Jurisdiction—Ejectment bill—Title to land.*

A court of equity has no jurisdiction over a bill which involves the title to real estate, and the determination of which requires the construction of legal conveyances formally and solemnly executed as muniments of title, the ascertainment from contradictory testimony of the facts as to notice and possession, and the application of proper legal principles to them. In such a case either party has the constitutional right to have his cause tried before a jury in an action of trespass or ejectment, and may not be deprived of it. Averments in the bill as to multiplicity of actions and irreparable injury are no basis for jurisdiction of equity, if the evidence in support of such averments fail.

Argued Jan. 10, 1906. Appeal, No. 84, April T., 1906, by defendant, from decree of C. P. Cambria Co., June T., 1904, No. 5, on bill in equity in case of Pennsylvania Coal & Coke Company v. Edwin G. Jones et al. Before RICE, P. J., PORTER, MORRISON, HENDERSON, ORLADY, BEAVER and HEAD, JJ. Reversed.

Bill in equity for an injunction. Before O'CONNOR, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was decree awarding an injunction.

*H. H. Waite* and *A. V. Barker*, of *Barker & Barker*, for appellants.—The bill is an ejectment bill : Duncan v. Iron-Works, 136 Pa. 478 ; Rhea v. Forsyth, 37 Pa. 503 ; Williams v. Fowler, 201 Pa. 336 ; Walters v. McElroy, 151 Pa. 549 ; Patterson's App., 129 Pa. 109 ; North Shore R. R. Co. v. Penna. Co., 193 Pa. 641 ; Booher v. Browning, 169 Pa. 18 ; Thomas v. Hukill, 131 Pa. 298 ; Frisbee's App., 88 Pa. 144 ; North Penna. Coal Co. v. Snowden, 42 Pa. 488.

*P. J. Little*, for appellee.

OPINION BY HEAD, J., March 12, 1906 :

Some time prior to June 18, 1903, the defendant, Edwin G. Jones and his associates, acquired, by lease or purchase, the right to open and work the coal in a tract of land in Clearfield township, Cambria county, known as the " Jordan Tract," containing several hundred acres. This seam of coal appears to have been so located that mines could be opened and the production of coal begun without any great expenditure of time or perhaps of money. At the same time the Pennsylvania Coal Company, the complainant and appellee, was a large owner and operator in that and other portions of Cambria county, it having been stated by its counsel at bar that its holdings were upwards of 150,000 acres of coal. Between the Jordan tract and the branch line of the Pennsylvania railroad over which the coal from said tract would reach the open market there intervened the " John Kratzler tract," concerning which the present contention arises. A tram or other railroad to carry the coal from the mines on the Jordan tract to the line of the Pennsylvania railroad would naturally cross this tract.

It appears from the evidence that even while Jordon owned the coal and contemplated its development, some negotiations were had between him and Kratzler with the object of securing a right of way across the land of the latter when it would be needed, but they resulted in nothing more than a verbal promise that a deal could or would be made. On June 18, 1903, after Jones had secured the Jordan coal and begun operations for its active development, he entered into a written agreement with Kratzler by the terms of which, for the consideration therein stated, the latter bound himself " to grant full right of

way over his land in Clearfield township for the purpose of putting in R. R. sidings, coal tipples and all necessary tracts (tracks) for shipping coal," etc. At this time Kratzler was the unquestioned owner of the surface of the land in dispute and the appellee had no interest whatever in it. This executory agreement was consummated on November 9, 1903, by the delivery to Jones by Kratzler of a deed duly signed and acknowledged which purported to convey in fee a strip thirty-three feet wide through the tract with additional widths for slopes, fills, etc., and upon the receipt of his deed Jones paid his purchase money in full.

Meantime the coal company on August 19, 1903, through one of its agents, M. D. Bearer, obtained from Kratzler an option to purchase a portion of his surface land at the price of $15.00 per acre, and it seems to be conceded that such description as is contained in this paper would embrace the right of way claimed by Jones, and hence we have the present dispute as to which of the two parties has, in law, succeeded to the title and right of possession which, before June 18, 1903, were unquestionably in Kratzler, the common grantor. This option gave to the company the privilege of buying on, or at any time before October 1, 1903, and the payment of the purchase money was to be the evidence of its intention to make the agreement absolute and become bound thereby. On September 17, 1903, the company procured an extension of time for thirty days and on October 22, another for a like term, thus carrying the option period to December 1, 1903. On November 30, 1903, it accepted a deed from Kratzler and paid the purchase money, and by reason thereof claims the exclusive ownership of and right of possession to all of the Kratzler land embraced in its deed, including the strip claimed by Jones under his earlier agreement and deed.

Each of the parties strenuously claims that possession was promptly taken, and here the evidence puts them in the same position of antagonism in which they are left by the various agreements and conveyances already recited. The complainant alleged its peaceable possession, but the evidence showed that such possession consisted of " nothing more than in prospecting, building fence and putting up notices." (Testimony of Edward Nicholson, p. 30, App.)

The complainant never having bound itself until it took its deed and paid its money on November 30, could not be said to have, prior to that date, taken any possession adverse to Kratzler, or to his vendee, Jones, while permissively surveying the land or drilling test holes etc. On the other hand, Jones testified (p. 19, App.) that he began work "at once" after he got his deed on November 6, and built a corduroy bridge, etc. It is reasonably apparent from all the testimony that neither party had any present use for an exclusive occupation of the land described in the conveyances.

While the complainant on the one hand was investigating its new purchase by prospecting, etc., Jones, on the other hand, was opening his coal and building his tram road from his mine over the Jordan land towards the line of his recent purchase. When he came to that line he found, it is true, the two-strand wire fence along it built by the company. He had, however, bought and was claiming only a narrow strip across it. He knew that his vendor, Kratzler, or any subsequent purchaser from him, had the right to fence and hold the balance of the tract and such possession would not be adverse to him. He cut the fence and began the construction of a cribbed or trestle road across the Kratzler tract. This was pulled down by the employees of the company who were in turn promptly arrested. Thereupon this bill was filed, a preliminary injunction was granted which, on final hearing, was made perpetual, and from that final decree this appeal was taken.

We have, then, as this somewhat lengthy statement of the facts drawn from the pleadings and evidence plainly shows, a substantial dispute between the parties as to which of them was the lawful owner of the strip of land in question, and this was the real point in controversy.

The complainant, as the prominent fact in its bill, averred its ownership and recited the conveyances by which it had been acquired. The defendant in answer denied this alleged ownership, set up his own title and recited the conveyances through which it came. The complainant attacked the earlier agreement of defendants, on the grounds of vagueness in terms and description and as lacking in mutuality. The defendant in turn assailed the option of the company because there was no consideration paid for the extension of it and showed, by

substantial evidence, that when it took its option originally and its deed later it had notice of the earlier title of Jones.

Without attempting to settle the dispute between the parties on its merits it is sufficient for us, in disposing of this appeal, to know it exists and is serious and substantial. It involves the title to real estate. Its determination requires the construction of legal conveyances formally and solemnly executed as muniments of title, the ascertainment, from contradictory testimony, of the facts as to notice and possession and the application of proper legal principles to them. The right of the complainant on every ground on which it has been rested has been denied, not only by the pleadings but by the proofs of the defendant. The jurisdiction of a court of equity to determine the real question in controversy has been challenged at every step from the first motion to dissolve the preliminary injunction to the argument of the present appeal. Under such circumstances either party has the constitutional right to have his cause tried before a jury and may not be deprived of it. To uphold the injunction in the present case would, we think, be depriving the defendant of the use and enjoyment of his property without "due process of law," and stripping our ordinary courts of law, always favored by our people, of the powers and prerogatives justly belonging to them.

In Rhea v. Forsyth, 37 Pa. 503, Mr. Justice WOODWARD says: "It is apparent that where the plaintiff's right has not been established at law, or is not clear but is questioned on every ground on which he puts it, not only by the answer of the defendant, but by the proofs in the cause, he is not entitled to remedy by injunction."

In Washburn's Appeal, 105 Pa. 480, Mr. Justice CLARK says: "Where rights which are legal are asserted on one side and denied on the other, the remedies are at law. They cannot be settled under equity forms."

In Duncan v. Iron-Works, 136 Pa. 478, Mr. Justice STERRETT says: "The legal right of the defendants to do the acts complained of, was thus the controlling question in the case. In view of that the learned master rightly held that the plaintiffs had mistaken their remedy."

In North Shore .R. R. Co. v. Penna. Co., 193 Pa. 641, Mr. Justice DEAN says: "A court of equity, in the absence of

fraud, has no jurisdiction to deprive a party of his legal title to land by decree ; that is solely within the jurisdiction of a court of law."

See also Godino v. Kane, 26 Pa. Superior Ct. 596 ; Scanlin v. Boro. of Conshohocken, 209 Pa. 48.

It is true the bill contained averments that an injunction was necessary to avoid a multiplicity of actions, and that the acts of defendants done or threatened would work irreparable injury to its land, but the evidence, in our opinion, wholly failed to establish either. No reason is shown why the whole civil question in controversy could not be settled by a single action of trespass or ejectment. Still less is it apparent wherein the construction of the defendants' tram road, if he chooses to take the risk of building it before the question is settled, would work any irreparable injury to the complainant which itself is engaged in the production and shipping of coal in that vicinity. If useless to it as a railroad connection it could easily be removed or destroyed. These averments in the bill do not of themselves ground the jurisdiction of a court of equity ; they simply furnish the basis for the admission of the all important evidence to establish them. The evidence failing, the averments are as if they had not been made. Taking then from the present bill the primary allegations of legal title to the disputed premises in the complainant, and the right of possession flowing therefrom, no sufficient reason is left to support the remedy by injunction. Thus it becomes manifest that the determination of the question of title was the controlling one in the case. This being so, the cases cited and a host of others lead us directly to the conclusion that the court below was without jurisdiction, and upon that ground we rest the judgment now to be entered.

Decree reversed and bill dismissed without prejudice to the rights of the parties in a proceeding at law; the costs of this appeal to be paid by the appellee.