## Bicking *v.* Florey's Brick Works, Appellant.

*Equity—Jurisdiction—Continuing trespass—Title—Remedy at law.*

1. Where the complainants in a bill in equity claim title in a strip of land and seek to restrain the defendants from maintaining a continuing trespass thereon in the shape of a bridge or causeway, and the defendants claim that the complainants have only an easement in the land, and the whole dispute turns merely on the construction of a particular deed made by a common ancestor in title, and there is no conflicting possession nor disputed facts, equity has jurisdiction over the case.

2. A court of equity will restrain a threatened interference with the exercise of a right, without a prior adjudication of law, where the right is clear and there is no serious dispute as to any material facts.

*Deed—Exception—Reservation.*

3. A reservation in a deed is the creation of a right or interest which had no prior existence as such in a thing or part of a thing granted. It is distinguished from an exception in that it is of a new right or interest. An exception is always of part of the thing granted. It is of the whole of the part excepted.

4. An owner of 560 acres of land upon which were erected certain mills fed by a mill race, conveyed 326 acres by metes and bounds to his son. The land conveyed was on both sides of and included the mill race, but not the land upon which the mills stood. The deed contained the following clause: "Saving and excepting out of the above grant of land and premises unto the grantor, his heirs and assigns the mill race or water course now dug through the said land and used to convey the water to the mills . . . . and also a free board or passage of one perch wide on either side of the same shall be kept open and remaining to the grantor, his heirs and assigns to pass and repass at all times to repair and amend the said mill race." The deed further provided that the grantee his heirs and assigns should have the right "to cut or open a passage or passages through the bank of the said mill race, and take out the water at convenient times, etc., to overflow or water his adjacent meadow." *Held*, that the deed intended an exception of the mill race and the adjacent strip, and that therefore the grantee took a fee in the mill race strip, and not merely an easement.

Argued Nov. 19, 1912.   Appeal, No. 4, Oct. T., 1912, by defendants, from decree of C. P. Chester Co., No. 552, in equity, in case of Mary P. Bicking, Widow, and Samuel P. Bicking, Executor of S. Austin Bicking, deceased, v. Florey's Brick Works, James Florey and William McClure, Jr.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.   Affirmed.

Bill in equity for an injunction.

BUTLER, J., found the facts to be as follows:

The common source of title of the respective properties of the plaintiffs and defendants is Thomas Downing who in 1750 owned a tract of 561 acres, which included the mill now owned by the plaintiffs, its race, and all the land now owned by the defendants.   Thomas Downing, by deed dated April 20, 1756, conveyed to John Downing, in fee, 326 acres of land, being part of the 561 acres referred to, through which the race extends, which deed described by metes and bounds as one tract, the land lying on both sides of, and under the race.

"Saving and excepting out of the above granted land and premises, unto the said Thomas Downing, his heirs and assigns, the mill race or water course now dug through the said land and used to convey the water to the mills now in the tenure or occupation of Richard Downing, supposed to be twelve feet in breadth, and also a free board or passage of one perch wide on either side of the same, which shall be kept open and remaining to the said Thomas Downing, his heirs and assigns, to pass and repass at all times to repair and amend the said mill race.   Yet, nevertheless, it is hereby declared that it shall and may be lawful to and for the said John Downing, his heirs and assigns to cut or open a passage or passages through the bank of the said mill race and take out the water at convenient times as to him or them shall seem meet, to overflow or water his adjacent meadow, but so as not in the least to obstruct the water in its passage along the race

to the mills aforesaid, nor at any time to take or suffer to run out so much water as thereby to damnify the said mills, or render them less serviceable to the occupier or occupiers· of them.  And the said John Downing, for himself, his heirs and assigns, doth hereby covenant, promise and grant to and with the said Thomas Downing his heirs and assigns, that he, the said John Downing, nor his heirs and assigns, shall not nor will at any time do or cause to be done, anything whereby the water may be obstructed in its proper passage along the race to the mills before mentioned, and if at any time there shall happen a breach to be made by reason of taking the water out as aforesaid, or that there shall happen to run out at the aforesaid passage so much water as to damnify or render less serviceable the before-mentioned mills, that then the said John Downing, his heirs and assigns, shall and will forthwith sufficiently amend and stop the same."

The premises now owned by the "Florey Brick Works," are a part of the 326 acre tract thus acquired by John Downing.  Thomas Downing died seized of the residue of the said 561 acre tract, including the mill and the mill race, and right of passage on either side, reversed, as above set forth, and by his will devised the mill, race, etc., to Richard Downing:

"I give and devise unto my son Richard Downing, and to his heirs and assigns forever, all my water, corn or grist mill and fulling mill situate in East Caln aforesaid, with all the buildings, dwelling houses and appurtenances thereunto belonging or appertaining.  And whereas I have already by deeds of lease and release bearing date the 20th day of the fourth month, 1756, conveyed unto my son John Downing, a messuage tenement and tract of land thereunto belonging, containing 326 acres of land, more or less, being part of the land which I purchased from John Taylor, lying in East Caln, aforesaid, excepting the mill race across the same, with the conveniency of land on each side thereto, to answer all advantages for the bringing of the water to my grist mill which is more

particularly specified in the deed aforesaid. All which property and privileges therein reserved I now give and devise unto my said son Richard Downing, his heirs and assigns forever."

This mill property, water course, etc., are now vested in the plaintiffs.

The Florey Brick Works, defendant, with a view to having access to its land on both sides of the race, has constructed and is maintaining a bridge across the race at a point where the race is about twenty feet wide, and its banks are a few inches higher than the surface of the water in a normal stage. Under the evidence and all the surroundings and conditions shown, we are satisfied that this bridge is constructed, maintained and used in a manner as little calculated to interfere with, or inconvenience, plaintiffs' enjoyment and care of the race as is practically possible. Up to within a few years, a bridge extended across the race, at a point a short distance above the location of the new one. It was used as a means of access between the parts of the property lying on both sides of the race, now owned by the defendants, and there are three bridges, including one on the public highway across the race. Under what circumstances these bridges were constructed does not appear.

The court entered a decree directing the removal of the bridge.

*Error assigned* was the decree of the court.

*Arthur P. Reid,* for appellants.—The court had no jurisdiction: Penna. Coal & Coke Co. v. Jones, 30 Pa. Superior Ct. 358; Rhea v. Forsyth, 37 Pa. 503; Tillmes v. Marsh, 67 Pa. 507; Barclay's App., 93 App. 50; Washburn's App., 105 Pa. 480; Duncan v. Iron Works, 136 Pa. 478; North Shore R. R. Co. v. Ry. Co., 193 Pa. 641; Miles Land Co. v. Coal Co., 231 Pa. 155; Marshall v. Penna. Co., 44 Pa. Superior Ct. 68; Booher v. Browning, 169 Pa. 18; New Castle v. Raney, 130 Pa. 546.

Thomas Downing's deed created an easement: Klaer v. Ridgway, 86 Pa. 529; Collison v. Philadelphia Co., 233 Pa. 350; Sheffield Water Co. v. Elk Tanning Co., 225 Pa. 614; Leavitt v. Towle, 8 N. H. 96; Pinkum v. EauClaire, 81 Wis. 301 (51 N. W. Repr. 550); Derby v. Hall, 68 Mass. 236; Spear v. Allison, 20 Pa. 200; Pittsburg & Lake Erie R. R. Co. v. Bruce, 102 Pa. 23; Rogers v. Stoever, 24 Pa. 186; Johnston v. Hyde, 33 N. J. Eq. 632; Everett v. Dockery, 52 N. Car. 390; Whitehead v. Garris, 48 N. Car. 171.

*A. M. Holding*, for appellees.—The court had jurisdiction: Piro v. Shipley, 211 Pa. 36; Andreas v. Steigerwalt, 29 Pa. Superior Ct. 1; Richmond v. Bennett, 205 Pa. 470; Miller v. Lynch, 149 Pa. 460; Manbeck v. Jones, 190 Pa. 171; Bright v. Allan, 203 Pa. 386.

The court was right in holding that appellees own the disputed land in fee: Mannerback v. R. R. Co., 16 Pa. Superior Ct. 622; Harlan v. Moore, 9 Watts, 360; Gibbs v. Sweet, 20 Pa. Superior Ct. 275; Hannum v. West Chester, 70 Pa. 367.

OPINION BY HEAD, J., April 21, 1913:

The plaintiffs in their bill prayed for an injunction to restrain the defendants from the commission or continuance of an alleged permanent trespass by the occupation of a portion of their land over which they had erected a bridge or causeway. The plaintiffs are the owners of a tract of land upon which is a mill fed by a mill race. They averred that they were the owners of the fee in the soil traversed by the mill race. The defendants denied that the plaintiffs had more than an easement to have the water flow through the mill race to the mill, and asserted that they themselves were the owners of the land covered by the water and therefore had the right to connect their land on both sides of the race by the bridge so long as it did not interfere with the proper enjoyment of the plaintiffs' easement. Because of this alleged dispute as to the

title, the defendants denied the jurisdiction of a court of equity to entertain the bill.

It appeared from the records attached to the bill and answer that the sole question of dispute as to the title turned on the construction of a particular deed made by the common ancestor in title.   There was no disputed fact to be established by evidence, no conflicting possession, no question of any kind that could have been submitted to a jury, had the plaintiffs begun an action at law to recover damages for the alleged trespass.   Under these circumstances it would have been manifestly futile to have remitted the parties to one or more actions at law merely for the purpose of obtaining the proper construction of a single deed.   In such a state of the record we think it has been authoritatively determined that a court of equity could properly entertain a bill to prevent a permanent trespass.

In Piro v. Shipley, 211 Pa. 36, Mr. Justice MESTREZAT said: "We agree with the learned counsel for appellants that a court of equity has no jurisdiction to restrain by injunction an interference with a legal right which is in doubt and rests upon disputed questions of fact.   Before a party can invoke the aid of a chancellor in such cases, he must have his right determined in an action at law.   But it is equally well settled in this jurisdiction, that a court of equity will restrain a threatened interference with the exercise of a right without a prior adjudication of law where the right is clear and there is no serious dispute as to any of the material facts.   Both of these propositions are so well settled that no authorities need be cited to sustain them."   As already stated, in the case before us there is no disputed question of fact.   The entire controversy turns upon the proper legal construction of the deed to which we shall later refer.   This raises no such dispute as to the title as should, in principle or authority, require that the legal right be first settled in an action at law.   That is certain which can be made certain.

In Andreas v. Steigerwalt, 29 Pa. Superior Ct. 1, the same doctrine is asserted and many authorities are cited in the opinion of President Judge RICE. He concludes his discussion with this language: "It cannot be said that there is a substantial dispute or a serious dispute, where the plaintiffs' right to a way under his deed from the defendant is clear, and the defendant's denial of the right is based on testimony impeaching the deed which would be insufficient to warrant the court in submitting the question to the jury, if the case were tried at law." In the present case there is no testimony to impeach the deed, none required to explain any alleged ambiguity in it. The ascertainment of the respective rights of the parties is a pure question of law. No contrary doctrine is asserted in Pennsylvania Coal & Coke Co. v. Jones, 30 Pa. Superior Ct. 358. The distinction between that case and the present one will become sufficiently apparent from the following excerpt from the opinion of this court: "The complainant, as the prominent fact in its bill, averred its ownership and recited the conveyances by which it had been acquired. The defendant in answer denied this alleged ownership, set up his own title and recited the conveyance through which it came. The complainant attacked the earlier agreement of defendants, on the grounds of vagueness in terms and description and as lacking in mutuality. The defendant in turn assailed the option of the company because there was no consideration paid for the extension of it and showed, by substantial evidence, that when it took its option originally and its deed later it had notice of the earlier title of Jones." There was thus involved in that case the disposition of many questions of fact to be established by evidence, and the conclusion that the case was outside the jurisdiction of a court of equity was in harmony with all of the decisions on that subject.

Thomas Downing was the ancestor in title of both of the parties to this controversy. He was the owner of a large tract of land about 560 acres in extent, upon which

were erected certain mills fed by the mill race, the title to which is now in controversy. He granted and conveyed to his son, John Downing, in fee 326 acres by metes and bounds, and the tract so described in the body of the deed was on both sides of and included the mill race as it then and now existed. That deed which is the foundation of the title of the defendants in the present bill, contained the following: "Saving and excepting out of the above granted land and premises unto the said Thomas Downing, his heirs and assigns, the mill race or water course now dug through the said land and used to convey the water to the mills now in the tenure or occupation of Richard Downing, supposed to be twelve feet in breadth and also a free board or passage of one perch wide on either side of the same shall be kept open and remaining to the said Thomas Downing, his heirs and assigns, to pass and repass at all times to repair and amend the said mill race. Yet nevertheless it is hereby declared that it shall and may be lawful to and for the said John Downing, his heirs and assigns, to cut or open a passage or passages through the bank of the said mill-race and take out the water at convenient times, etc., to overflow or water his adjacent meadow, etc."

Was this an exception by the grantor of something out of the grant which otherwise would have passed with it, or was it but a reservation out of the thing granted of something that did not before exist? First of all, the words used are apt and precise to create an exception. The mill race was an existent thing and necessary for the use and enjoyment of the remainder of the property of the grantor upon which his mills were located. It may next be remarked that the grantor, in the language quoted, excepted, as he declared, not only the mill race, which might have meant merely the water flowing therein and the right to use the same, but also the water course now dug through the said land and used to convey the water. It would be a straining of this language to interpret it as meaning that the grantor intended to reserve to himself but an easement

to flow water through and over the soil which he was conveying to another.

Finally, after making the exception of the race and the water course and of the rod wide strip on either side of it, it is expressly provided that his grantee may have the right to cut through that rod wide strip and take water from the race for certain purposes, such right, however, to in no way interfere with the supply of water necessary for the mills. This seems to invite the construction that the grantor was in reality creating an easement for his grantee in and upon the land which he had excepted out of his grant rather than the converse of the proposition upon which the defendants must rest their case. The distinction always recognized by the law between an exception in a deed and a reservation is well stated by Mr. Justice Trunkey in Kister v. Reeser, 98 Pa. 1: "A reservation is the creation of a right or interest which had no prior existence as such in a thing or part of a thing granted. It is distinguished from an exception in that it is of a new right or interest. An exception is always of part of the thing granted, it is of the whole of the part excepted. . . . Thus, when a deed in fee of land was made, the grantor 'saving and reserving, nevertheless, for his own use the coal contained in the said piece or parcel of land, together with free ingress, etc.,' it was held that the saving clause operated as an exception of the coal. The coal was land and the reservation of that part of the land excepted it from the grant. It was a thing corporate, existed when the grant was made, and differed from something newly created, as a rent or other interest strictly incorporeal." The same distinction is declared in Whitaker v. Brown, 46 Pa. 197, in an opinion by Mr. Justice Woodward in which are cited all of the earliest authorities on the subject.

In Mannerback v. Railroad Co., 16 Pa. Superior Ct. 622, the deed of conveyance which gave rise to the controversy contained the following: "Excepting and forever reserving the graveyard on the lands hereby conveyed at all times hereafter to enter thereon without

hindrance or denial of the grantee, his heirs or assigns." This court, following the cases cited, held that the language quoted created an exception and that title to the graveyard did not pass by the grant. The opinion of W. W. PORTER, J., contains the following: "The deed, above mentioned, described a tract of land which included the graveyard. That which was withheld from the grantee, by the clause quoted, was a part of the tract conveyed. It was a piece of the land, described by the use to which it was then put. A 'graveyard' is impossible of definition, if reference to the fact that it is a piece or parcel of land be denied. There was no creation of a right or interest which had no prior existence." This language could be applied with entire propriety to the exception in the deed before us.

The conclusion reached by the learned court below finds further support in the cases of Harlan v. Moore, 9 Watts, 360; Hannum v. West Chester, 70 Pa. 367, although in those cases the language construed by the court was not precisely the same as in the case before us. But the reasoning of those cases, as of all the others cited, leads us all to the conclusion that the learned court below was correct in holding that the plaintiffs were the owners in fee of the land through which the mill race had been dug, and as a consequence that the construction of a bridge over the same, without their permission and against their will, constituted a permanent trespass which equity would enjoin. It may be proper to note that it appears from the findings of the court below that there are already three bridges across the mill race, one of which carries a public road. None of these are affected by the present proceeding and decree. It is further averred in the bill that the present defendants had previously erected a bridge on the site of the present one, which they were required to remove by the decree of the court, and that their present structure is but a violation of that decree. The answer alleges that the former bridge was so constructed that it was likely to interfere even with the enjoyment of the

conceded easement of the plaintiffs while the present structure is free from any such objection. We do not have that proceeding in the present record. It seems reasonably plain, however, that both of the parties have now reached a situation where they stand strictly on their respective rights and are prepared to abide by the consequences of an adjudication of them. The assignments of error are overruled.

Decree affirmed. The costs of this appeal to be paid by appellant.