## Black v. Woodward, Secretary of Internal Affairs of Pennsylvania, and United States Shipping Board, etc.

*Equity—Demurrer—Laches.*
1. Only gross laches can be set up in a suit in equity by way of a demurrer.

*Equity—Injunction—No threatened injury—Real property—Patent of the Commonwealth—Effect on title.*
2. A patent of the Commonwealth of Pennsylvania conveys only such title as the Commonwealth may possess. An injunction to restrain the issuance of a patent cannot be granted at the suit of one who claims the Commonwealth has no title, for the reason that the patent, if granted, will not affect either his title or his right to purchase money, and, therefore, does not threaten to do him any injury.

*Equity — Jurisdiction — Injunction—Public officers—Discretionary acts— Patents to real property.*
3. Courts cannot interpose by injunction or mandamus to limit or direct the discretion and action of departmental officers in respect to matters within their jurisdiction and control. The Secretary of Internal Affairs, having express statutory discretion in the granting of patents to real property, cannot be enjoined from the exercise thereof.

*Equity—Jurisdiction—Title to real property.*
4. Equity courts of Pennsylvania have no jurisdiction to try title to real property except as the question of title is incidental and subordinate to other elements which call for the exercise of equitable remedies.

*Board of Property—Findings conclusive on caveator—Act of April 3, 1792.*
5. Under section 11 of the Act of April 3, 1792, 3 Sm. Laws, 70, 74, the findings of the Board of Property are binding and conclusive against parties and privies to the *caveat.*

Demurrer to bill for an injunction. C. P. Dauphin Co., Equity Docket, No. 681.

*Spencer Gilbert Nauman, Jesse E. B. Cunningham* and *Roberts, Montgomery & McKeehan,* for plaintiff.

*George E. Alter,* Attorney-General, *William I. Swope* and *Geo. Ross Hull,* Deputy Attorneys-General, for Secretary of Internal Affairs.

*John McI. Smith* and *Thomas Raeburn White,* for United States Shipping Board Emergency Fleet Corporation.

WICKERSHAM, J., Oct. 20, 1921.—The plaintiff complains that prior to Sept. 14, 1917, together with Francis H. Bohlen, he was the owner in fee simple of a certain tract of land, containing 54.91 acres, formerly in the bed of the Delaware River, being a part of a larger tract of land, commonly known as "Hog Island." The said 54.91 acres were being formed by accretion, etc., over a period of years ranging from 1885 to 1917. On Sept. 14, 1917, the plaintiff and Bohlen granted and conveyed to the American International Corporation the entire "Hog Island" tract of 846 acres—which included the parcel of 54.91 acres above referred to—by deed in fee simple. The Real Estate Title Insurance and Trust Company of Philadelphia, before the conveyance was made, refused to insure the title for the said 54.91 acres tract of land above referred to, for the reasons that, it contended, there was neither a paper title of record nor a title thereto by adverse possession in the plaintiff and Bohlen, who relied upon a title acquired by accretion. They alleged that the land was added to the original shore line, of which they were the sole riparian owners, gradually and imperceptibly over a long period of years by alluvial deposit thereon. Upon the refusal of said Real Estate Title Insurance and Trust Company of Philadelphia to insure the title to said tract of

land, the American International Corporation refused to pay the plaintiff and Bohlen therefor; whereupon it was agreed between them that the sum of $110,000, the purchase price of said tract of 54.91 acres, should be deposited with the Real Estate Title Insurance and Trust Company of Philadelphia by the said American International Corporation pending the perfecting of the title to said land by the plaintiff and Bohlen, and the conveyance by them of a good and marketable title thereto to the said American International Corporation, and that any expenses incurred in obtaining such title were to be charged against and deducted from said fund. The said tract, however, was included in the conveyance by plaintiff and Bohlen of the entire tract of 846 acres to the said American International Corporation.

A suit was brought by the plaintiff and Bohlen against the American international Corporation for failure to pay the purchase price therefor in the Court of Common Pleas No. 5 of the County of Philadelphia, which resulted in a verdict in favor of the plaintiff for $27,500. This verdict, on appeal, was reversed by the Supreme Court of Pennsylvania, in an opinion reported in 264 Pa. 260, upon the ground, principally, that the plaintiff had not delivered a good and marketable title to the said 54.91 acres tract of land to the defendant.

That the American International Corporation, after said decision of the Supreme Court was rendered, applied to the defendant, James F. Woodward, Secretary of Internal Affairs, for a patent to said land, to which application the plaintiff and the said Bohlen filed a caveat. Hearings were had upon said application and caveat before the Board of Property of the Commonwealth of Pennsylvania, after which a warrant was issued by the Secretary of Internal Affairs, authorizing the survey and appraisement of said land for the purpose of granting a patent therefor, and a board of three appraisers was appointed, who completed their labors and filed a report with the said James F. Woodward, Secretary of Internal Affairs, appraising said tract of 54.91 acres for the purpose of granting a patent at $82,380.

The plaintiff avers that he and Bohlen, on Sept. 14, 1917, conveyed to the American International Corporation a good and marketable title to said tract of 54.91 acres; that no title to the same reposed in or now reposes in the Commonwealth of Pennsylvania; and that James F. Woodward, Secretary of Internal Affairs, accordingly had and has no lawful right to authorize the granting of a patent therefor, or for any part thereof, nor had the Board of Property of the Commonwealth of Pennsylvania any lawful right to authorize the issuance of a warrant to survey and appraise said land as the property of the Commonwealth of Pennsylvania for the purpose of granting a patent therefor.

That the plaintiff is disqualified from taking an appeal from the said order of the said Board of Property, for the reason that he and Bohlen granted and conveyed the title to the said premises to the said American International Corporation by a fee simple deed, and there is accordingly no title remaining in the plaintiff on which to found an ejectment proceeding.

That the American International Corporation, on March 2, 1920, conveyed all its right, title and interest in said tract of 846 acres to the defendant, the United States Shipping Board Emergency Fleet Corporation; by separate instrument bearing the same date, the said American International Corporation assigned and transferred to the United States Shipping Board Emergency Fleet Corporation all its right, title and interest in and to the application for a patent to said tract of 54.91 acres filed by the American International Corporation, and also assigned to the said United States Shipping

1 D. & C.

Board Emergency Fleet Corporation all its right, title and interest in said fund of $110,000 now on deposit with the Real Estate Title Insurance and Trust Company of Philadelphia.

That by assignment dated Feb. 2, 1921, the said Francis H. Bohlen sold and assigned all of his interest in and to the said fund of $110,000 now on deposit as aforesaid to the plaintiff.

That the said James F. Woodward, Secretary of Internal Affairs, is ready to grant a patent for said tract of 54.91 acres to the defendant, United States Shipping Board Emergency Fleet Corporation, upon payment of the sum of $82,380, being the valuation for this purpose placed thereon by the said appraisers.

The plaintiff further alleges that the action of James F. Woodward, Secretary of Internal Affairs of the Commonwealth of Pennsylvania, in issuing a warrant to survey and appraise said land for the purpose of granting a patent therefor acted unlawfully, without authority and in violation of the rights of the plaintiff, who, alleging he is without adequate remedy at law, needs equitable relief, and prays that an injunction issue, preliminary until final hearing and perpetual thereafter:

1. Enjoining and restraining the defendant, James F. Woodward, Secretary of Internal Affairs of the Commonwealth of Pennsylvania, from executing any patent or other instrument conveying, or intended to convey, to the defendant, United States Shipping Board Emergency Fleet Corporation, its successors or assigns, or to any other persons or corporation, any title to the said tract of 54.91 acres.

2. Enjoining said secretary from accepting on behalf of the Commonwealth of Pennsylvania, and enjoining and restraining the defendant, the United States Shipping Board Emergency Fleet Corporation, from paying any sum whatsoever as consideration for the granting of said patent.

3. Enjoining and restraining the defendant, the said United States Shipping Board Emergency Fleet Corporation, from using, or attempting to use, any part of said fund of $110,000 for the payment of a patent therefor, or for any other purpose, save to recompense the plaintiff for the conveyance of the title to said land.

4. That a decree be entered ordering and directing the defendant, United States Shipping Board Emergency Fleet Corporation, to take such steps as shall be necessary to cause the said fund of $110,000 now on deposit as aforesaid to be paid and delivered to the plaintiff forthwith.

5. Such other and further relief, etc.

The defendant, the United States Shipping Board Emergency Fleet Corporation, filed its answer to the bill of complaint of the plaintiff, alleging, among other things, this suit is in substance, fact and effect against the United States of America, to the bringing and maintenance of which the United States of America has not consented; and, moreover, this suit is not one of equitable cognizance, in that it is an attempt by the plaintiff to try the title to the real estate described in his bill of complaint in equity instead of at common law, and generally denying the jurisdiction or power of this court to entertain the bill of complaint.

For the reasons hereafter given, we think the demurrer of the United States Shipping Board Emergency Fleet Corporation must be sustained.

The defendant, James F. Woodward, Secretary of Internal Affairs of the Commonwealth of Pennsylvania, filed his demurrer to the bill of the plaintiff, setting forth five reasons therefor. We filed an opinion overruling this demurrer because it failed to state the particulars and assign the reasons or

grounds thereof in detail, as required by Rule No. 32 of the rules in equity as adopted by the Pennsylvania Supreme Court and revised and amended to Nov. 1, 1920. Ten days were allowed James F. Woodward, Secretary of Internal Affairs, to file an amended demurrer, with which he complied Oct. 3, 1921.

The first cause of demurrer of the said James F. Woodward, Secretary of Internal Affairs of the Commonwealth of Pennsylvania, alleges: "That upon the face of the plaintiff's bill it appears that for a period of more than twelve months he failed and neglected to bring his action, during which time the Commonwealth of Pennsylvania and the United States Shipping Board Emergency Fleet Corporation, the defendants, expended moneys upon the faith of the adjudication theretofore made by the Board of Property, wherefore the plaintiff, by reason of his laches, is not entitled to equitable relief."

We think this cause of demurrer cannot be sustained. The cases have consistently held that only gross laches can be set up by way of demurrer: Corbett's Estate, 10 Dist. R. 59; Edwards v. Railway Co., 268 Pa. 228, in which it was said by the late Chief Justice Brown: "The question of laches does not depend, as does the statute of limitations, upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under the circumstances of the particular case, plaintiff is chargeable with want of due diligence in failing to institute or prosecute his proceeding:" Townsend v. Vanderwerker, 160 U. S. 171.

The second cause of demurrer alleged is: "That upon the face of the plaintiff's bill it appears that the act which he seeks to restrain, to wit, the issuance of a patent for the land described in the bill, does not threaten any injury to the plaintiff, for the reason that it will not affect either his title to said land or his right to the purchase money."

We think this cause of demurrer must be sustained. The patent of the Commonwealth of Pennsylvania is in effect a quit-claim deed from the Commonwealth, and, therefore, conveys only what title the Commonwealth may possess; if the Commonwealth has no title, the patentee gets nothing: Act of April 9, 1781, 1 Sm. Laws, 529; Act of April 5, 1782, 2 Sm. Laws, 13; Act of June 27, 1913, P. L. 665; Sergeant's View of the Land Laws of Pennsylvania, 72, 168, 171.

Section 3 of the Act of April 5, 1782, 2 Sm. Laws, 13, provides as follows: "Provided, that no determination of this Board of Property shall be deemed, taken or construed to extend in any manner whatever to the preventing either of the parties from bringing their action at the common law, either for the recovery of possession or determining damages for waste or trespass; but the courts of law shall remain open to the said parties in as full and ample manner, as if no determination had ever been given."

The third, fourth and fifth causes of demurrer raise the question of jurisdiction of the court and may be considered together. It is claimed by the Commonwealth in the third cause of demurrer that this court has no jurisdiction, for the reason that the granting of a patent in pursuance to an adjudication of the Board of Property is the exercise by a public officer of an official duty involving the exercise of judgment and discretion.

Recapitulating the salient facts stated in the bill, it appears that, prior to Sept. 14, 1917, the plaintiff entered into certain option agreements with the American International Corporation, binding himself to sell and transfer to it a tract of land containing 846 acres, which included the fifty-four acres described in his bill. After these agreements had been entered into and before the purchase money was paid and the title transferred, the title of the property

1 D. & C.

Black v. Woodward, Secretary of Internal Affairs of Penna., etc.

was submitted for examination to the Real Estate Title Insurance and Trust Company of Philadelphia, a corporation engaged in the business of examining titles to real estate and insuring the same. This corporation reported, prior to the transfer, that the plaintiff could not give clear and undisputable title to the fifty-four acres. The plaintiff then knew, or should have known, that the Commonwealth had title, or at least color of title, to this land; he was thus put upon notice that his title was defective and that some steps would have to be taken to divest the Commonwealth of whatever right it might have and to secure for himself a perfect title. Notwithstanding this notice, he voluntarily executed a deed for the entire 846 acres, which included the fifty-four acres, and by delivery of this conveyance to the American International Corporation divested himself of whatever title he might have had. He thereupon brought suit against the American International Corporation for failure to pay the purchase price therefor, in the Court of Common Pleas No. 5 of the County of Philadelphia, and obtained a judgment in his favor. This judgment was reversed by the Supreme Court, in an opinion reported in 264 Pa. 260. It was there held that: "An action for the purchase money of land is in legal effect a petition or bill for specific performance of the contract of purchase and is governed by the same equitable principles; hence, whether the proceeding be by petition, bill or action of *assumpsit* to recover the purchase money, the vendee is not obliged to take a doubtful title; and every title is doubtful which invites or exposes the party holding it to litigation. . . . If there be a color of an outstanding title which may prove substantial, though there is not enough evidence to enable the chancellor to say that it is so, a purchaser will not be held to take it and encounter the hazard of litigation with an adverse claimant."

After stating this principle, Mr. Justice Simpson, writing the opinion of the Supreme Court, concludes:

"To now compel defendant to take title would subject it to that hazard. If the Commonwealth ever contests plaintiff's title, she may be able to show such a state of facts as would prevent the doctrine of accretion from applying. In any event, there is at least 'color of an outstanding title' in her, and though there may be 'nothing in evidence to enable the chancellor to say' she has the better title, defendant is not required to 'encounter the hazard of litigation' with her.

"The judgment of the court below is reversed without prejudice to plaintiffs' right to hereafter demand the purchase money of said land whenever they can give this defendant a marketable title thereto."

After this decision was handed down, the American International Corporation made application to James F. Woodward, Secretary of Internal Affairs, for a patent to said land, to which application the plaintiff and his former partner, Francis H. Bohlen, filed a *caveat*, and hearings were had upon said application and *caveat* before the Board of Property of the Commonwealth of Pennsylvania. The conclusion of the said board is found in Exhibit "A" of the plaintiff's bill of complaint, and is as follows: "It appearing that the requirements of the Act of 1913 have been complied with by the said applicant, the application is allowed and the *caveats* against the same dismissed."

The granting of the patent follows, as a matter of course, the adjudication in favor of the application, as it is only a certified record of the adjudication. A court of equity would have no jurisdiction to interfere with the adjudication of the Board of Property, and it would seem to us to naturally follow that it would now have no right to interfere with the issuing of a patent in pursuance of the said adjudication. This procedure is under the Act of May 3,

1909, P. L. 413, which gives to the Secretary of Internal Affairs discretion as to surveys and finding the land vacant. While it is true that the application in this case was made under the provision of the Act of June 27, 1913, P. L. 665, in reference to patenting lands in the beds of navigable rivers, yet section 2 of said act provides: "Any such land shall thereafter, upon application, be surveyed, appraised and patented in the same manner as other vacant or other unappropriated land may now be surveyed, appraised and patented," which proceeding, as we have stated, is authorized by the Act of May 3, 1909, P. L. 413.

The plaintiff, in support of his contention that the court has jurisdiction to hear and determine this case, directs our attention to the Act of March 19, 1903, P. L. 32, being an act amending section 1 of an act entitled "An act relating to mandamus," approved June 8, 1893, which provides, *inter alia,* that the several Courts of Common Pleas within the respective counties shall have power to issue writs of mandamus to all officers and magistrates elected or appointed in or for the respective county, . . . or having their chief place of business within such county; . . . and the Court of Common Pleas of the county in which the seat of government is or may be located shall have power, and it shall be required, to issue the writ of mandamus to the . . . Secretary of Internal Affairs, . . . etc. The plaintiff also, in support thereof, directs our attention to the Act of June 26, 1895, P. L. 315, providing for a separate appearance docket for all cases in which the Attorney-General appears officially for the Commonwealth in the courts of the county in which the seat of government is situated; also to United States v. Lee et al., 106 U. S. 196, and Louisville & N. R. R. Co. v. Bosworth, 209 Fed. Repr. 380, in support of his contention that this court, sitting in equity, has authority to control the discretion of the Secretary of Internal Affairs. We quite agree that if the act of the Secretary of Internal Affairs in this proceeding was entirely ministerial, the authorities cited would be controlling. We think, however, that the cases cited are clearly distinguishable. Louisville & N. R. R. Co. v. Bosworth, 209 Fed. Repr. 380, holds that such action is maintainable "if for any reason the officer has no right to take such action, and it will be a wrong to plaintiff which equity will enjoin." How can it be said with any reason that the act of the Secretary of Internal Affairs in issuing a patent to the American International Corporation, after such patent has been authorized by the Board of Property in a proceeding in which the *plaintiff was an active and interested party,* is "*an act contrary to law,*" we fail to comprehend. The Lee case, reported in 106 U. S. 196, holds that the United States cannot be sued as a party defendant in any court whatever, except where Congress has provided for such suit, but it was expressly held "this exemption is, however, limited to suits against the United States directly and by name, and cannot be successfully pleaded in favor of officers and agents of the United States when sued by private persons for property in their possession as such officers and agents." It is not contended in the case at bar that the Secretary of Internal Affairs is in possession of land belonging to the plaintiff. Whether title to the land in dispute is in the Commonwealth raises another question of jurisdiction which we will discuss hereafter.

The general rule is that the courts cannot interpose by injunction or mandamus to limit or direct the discretion and action of departmental officers in respect of pending matters within their jurisdiction and control. It has been decided that the action of the Secretary of the Interior, directing the commissioner of the land office to cancel an entry of land, is within the exclusive control of the department and cannot be interfered with by injunction while

1 D. & C.

the matter is pending, and the United States Circuit Court has no power to stay the Land Department in the discharge of a duty which is not ministerial, but involves the exercise of judgment and discretion: Joyce on Injunctions, § 54; City of New Orleans *v.* Paine, 51 Fed. Repr. 833, affirmed in 147 U. S. 261.

In Pennsylvania it has been held that a bill filed to restrain public officers from proceeding in official acts, but without any averment that they are proceeding without lawful authority, is demurrable: Delaware County's Appeal, 119 Pa. 159.

In the case at bar the Secretary of Internal Affairs is given by act of assembly *discretionary power* as to the survey, and to him and to the other State officials as to the appointment of appraisers, and he is also clothed with power to collect for the State the amount of the appraisement and to withhold the patent until the money is paid; furthermore, he has express statutory authority to grant the patent to the applicant therefor. We think this cause of demurrer should be sustained.

The Commonwealth further contends that this court, sitting in equity, has no jurisdiction to grant the relief prayed for because the ownership of land is involved, and this is the vital question in the case—the question which settles and determines the issue between the plaintiff and the demurrant.

The equity powers of this court are conferred by art. v, § 20, of the Constitution of Pennsylvania, which provides: "The several Courts of Common Pleas, besides the powers herein conferred, shall have and exercise within their respective districts, subject to such changes as may be made by law, such chancery powers as are now vested by law in the several Courts of Common Pleas of this Commonwealth, or as may hereafter be conferred upon them by law."

"The powers conferred upon them by law" were determined and limited by section 13 of the Act of June 16, 1836, P. L. 784, as amended and extended by section 1 of the Act of Feb. 14, 1857, P. L. 39.

That the owners of property may not be deprived thereof except by trial by a jury according to the course of the common law is fundamental, and the rights of the Commonwealth and its citizens in the enjoyment of the rights of property are protected by the 14th Amendment to the Constitution of the United States, which provides: "Nor shall any state deprive any person of life, liberty or property without due process of law;" and by art. i, § 6, of the Constitution of Pennsylvania, which provides: "Trial by jury shall be as heretofore, and the right thereof remain inviolate."

The title to the fifty-four acres of land mentioned in the bill filed in this case is involved. The plaintiff claims he has an absolute title to the land which he has conveyed to the American International Corporation, and that this proceeding is instituted for the purpose of collecting the purchase money; but the Commonwealth of Pennsylvania also claims title to this land, and to grant the equitable relief claimed by the plaintiff and direct that the $110,000 now held by the Real Estate Title Insurance and Trust Company of Philadelphia be paid to the plaintiff would result in depriving the Commonwealth of Pennsylvania of the title which it claims it has and which appraisers have valued at $82,380. We do not think we have the power to grant the relief claimed by the plaintiff. The Supreme Court of Pennsylvania, when this case was before it, closed its opinion with the significant words, that while the judgment for a part of the purchase money claimed in the suit by the defendant against the American International Corporation was reversed, this reversal was *"without prejudice to the plaintiffs' right to hereafter demand the*

*purchase money of said land whenever they can give to defendant a marketable title thereto.*" Our attention has not been directed to anything upon the record in this case which shows, or even suggests, that the plaintiff has complied with this very reasonable direction of the Supreme Court of Pennsylvania that he furnish and supply to the defendant a good and marketable title to the real estate; and until he has so complied, he cannot successfully set up in this court of equity a claim to all of the said purchase money so placed in escrow. To permit him to so do might result in a serious loss to the Commonwealth of Pennsylvania if it can show a title to said tract. Furthermore, the defendant, the United States Shipping Board Emergency Fleet Corporation would thus be compelled to pay for a title which is doubtful; this, the Supreme Court holds, they cannot be required to do: Black et al. v. American International Corporation, 264 Pa. 260.

In Pennsylvania Canal Co. v. Middletown and Harrisburg Turnpike Co., 1 Dist. R. 663, in which the title to a narrow strip of land in the Borough of Steelton was in dispute, and was claimed by plaintiff and defendant, this court held that a court of equity has no jurisdiction to determine the legal title to real estate and the right of possession thereunder. President Judge Simonton, in a very able and convincing opinion, has collected the authorities upon the subject, and concludes as follows: "In accordance, therefore, with the doctrine recognized and enforced in the cases above cited, and without any expression of opinion on the merits of the case, we must decide that we have no jurisdiction to continue the preliminary injunction, and that it must be, and it is, therefore, hereby decreed to be dissolved."

The reasoning of Judge Simonton is so convincing that we have no hesitancy in adopting it as our own, and reach the same conclusion with regard to the rights of the plaintiff in this case which he reached in the case above quoted. We think the Commonwealth is entitled to have its title to the land in dispute submitted to and passed upon by a jury: Norris's Appeal, 64 Pa. 275, where it was said by Mr. Justice Strong, in construing the Acts of 1858 and 1859, purporting to confer upon the Courts of Common Pleas jurisdiction in cases of disputed boundaries: "It cannot mean that the legislature may confer upon the Supreme Court and the Courts of Common Pleas the power of trying according to the course of chancery any question which has always been triable according to the course of law by a jury. If it can, then an ejectment founded solely on legal title, and action of debt on a bond, or a replevin, or an action of trespass, may be sent into chancery, all contested facts in it to be decided by the judge, and the intervention of a jury be unknown. Then, what has become of the constitutional right of the citizen? Such a doctrine would startle the people of this Commonwealth, and justly, for it would deprive them of one of their most valuable privileges. No power in our government can take from the litigant the right to have his case tried by a jury, substantially in the mode and with the same effect as that which belonged to jury trials in similar cases when the Constitution of 1776 was adopted." See, also, Washburn's Appeal, 105 Pa. 480; O'Neil v. McKeesport, 201 Pa. 386; Scanlin v. Conshohocken Borough, 209 Pa. 48, and Pennsylvania Coal and Coke Co. v. Jones, 30 Pa. Superior Ct. 358; Nanheim v. Smith, 253 Pa. 380.

It is quite true that the plaintiff in his brief, and his counsel in their oral argument, contended that the court has jurisdiction by stating that the plaintiff does not seek to recover any land, but is mainly seeking to recover the purchase money for land; that the action is not an action to establish his title to land, because he expressly admits that he does not have the title, and

1 D. & C.

avers that he has conveyed his title to the American International Corporation; but this contention seems to overlook the first prayer of his bill, which is a prayer "enjoining and restraining the defendant, James F. Woodward, Secretary of Internal Affairs of the Commonwealth of Pennsylvania, from executing any patent or other instrument conveying, or intended to convey, to the defendant, United States Shipping Board Emergency Fleet Corporation, its successors or assigns, or to any other person or corporation, any *title to the said tract of 54.91 acres.*"

We think, therefore, that the bill presents a clear case of an attempt, by proceeding in equity without the intervention of a jury and contrary to the course of common law, to deprive the Commonwealth of Pennsylvania of its property and to divest its title. This result cannot be accomplished in a court of equity. If we were to proceed to a final hearing, the result would probably be that the plaintiff would proceed to prove title to the land on Sept. 14, 1917, and he would also endeavor to prove that the Commonwealth did not at that time, or any other time, have any title to the land in question. Without this proof he could not recover the purchase money: Black *v.* American International Corporation, 264 Pa. 260. The Commonwealth, on the other hand, would be required to defend by showing what title it had, after which the court would be obliged to find the facts—whether the plaintiff had any title prior to Sept. 14, 1917, and whether the Commonwealth had any title, either then or now—and the finding of these facts adversely to the Commonwealth, and an injunction granted thereon, would have precisely the same force and effect as a verdict in an action of ejectment against the Commonwealth.

A "court of equity," in the absence of fraud, has no jurisdiction to deprive a party of his legal title to land by a decree; that is solely within the jurisdiction of a "court of law:" North Shore R. R. Co. *v.* Pennsylvania Co., 193 Pa. 641.

The plaintiff in his brief suggests this is a bill to remove a cloud from a title, and in support of his contention cites Heppenstall *v.* Leng, 217 Pa. 491; Gray *v.* Citizens' Gas Co., 206 Pa. 303, and City Ice Co. *v.* Merchants' Ice Co., 48 Pa. C. C. Reps. 1. The last two of these cases were bills for specific performance, and throw no light upon the question of jurisdiction raised in this case.

In Heppenstall *v.* Leng, 217 Pa. 491, it was held that a court of equity has jurisdiction to remove clouds from a title whenever a deed or other instrument exists which may be vexatiously or injuriously used against a party, if the evidence to impeach or invalidate it is lost, or which may throw a cloud or suspicion over his title or interest, and he cannot immediately protect or maintain his right by any course of proceeding. When these facts appear in the case, a court of equity will afford relief by directing the instrument to be delivered up and canceled or by making any other decree which justice or the rights of the parties may require. A careful reading of the opinion of Mr. Justice Mestrezat clearly shows that this was a bill to remove a cloud from the title of the plaintiff. It appears from the pleadings in the case that the plaintiff purchased a tract of land which had been subject to a mortgage; that, at the time of the purchase, the mortgagees released the land from the lien of the mortgage; subsequently, the mortgagees were paid the mortgage money; later, they instituted a foreclosure proceeding and sold the land to the defendant's predecessor in title. It thus appeared that the plaintiff in the bill had secured a title free of the lien of the mortgage, that the mortgage had been paid, and that the supposed title of the defendant was founded upon what purported to be a valid foreclosure proceeding under the mortgage. The

214 DISTRICT AND COUNTY REPORTS.

Black *v.* Woodward, Secretary of Internal Affairs of Penna., etc.

purpose of the bill was to move the court to declare a mortgage satisfied which had in fact been paid, and which in equity and good conscience should have been satisfied.

The case is clearly distinguishable from the case at bar which we are now considering. The plaintiff in this case, with a full knowledge of the outstanding title of the Commonwealth, conveyed whatever title he had to the American International Corporation. He made this conveyance, notwithstanding the fact that at the time he was in possession of the property and should have delayed said conveyance until his title thereto was established. After the Board of Property of the Commonwealth of Pennsylvania had reached its conclusion and filed its written findings with the Secretary of Internal Affairs, he would have had his remedy by action of ejectment under the Act of 1792.

Under the decision of the Supreme Court in Black et al. *v.* American International Corporation, 264 Pa. 260, and after the decision of the Board of Property was rendered, it became the duty of the plaintiff, if he wished to press his claim for the purchase money so left in escrow, to bring an action to recover the same within the six months allowed him by the Act of 1792. Such action being equitable in its nature, the rights of the plaintiff to a portion of the purchase money, and the rights of the Commonwealth of Pennsylvania and of the United States Shipping Board Emergency Fleet Corporation, the applicant for the patent and the person now in possession of the land in controversy, could all have been adjusted, particularly as it appears the plaintiff and his vendees had entered into a contract as to the purchase money left in escrow, by which the plaintiff was to recover whatever was left of said money after deducting the cost and expenses of perfecting the title. (See paragraphs 8 and 9 of plaintiff's bill.)

This case must also be distinguished from the case of Heppenstall *v.* Leng, 217 Pa. 491, in that: (1) The State was not a party to the bill, and both the plaintiff and defendant were private citizens. The State had no claim to the land. (2) Both parties were out of possession.

In the case at bar, one of the defendants, the United States Shipping Board Emergency Fleet Corporation, being the successor to the American International Corporation, which was the successful party before the Board of Property, is considered to be in possession of the land in controversy: Burf rd *v.* McCue, 53 Pa. 427.

"If the defendant, or any one claiming under him, or any one claiming adversely to the plaintiff's title, was in possession of the premises, the plaintiff would be put to his ejectment:" Heppenstall *v.* Leng, 217 Pa. 491-494.

Nor can the bill filed in this case be held to be a bill of peace, for, "to entitle the plaintiff to relief in such cases, the concurrence of three particulars was essential. He must have been in possession of the property; he must have been disturbed in its possession by repeated actions at law, and he must have established his right by successive judgments in his favor:" Holland *v.* Challen, 110 U. S. 15, 19.

In the present case the bill is not a bill to quiet title, because it is not brought to prevent a multiplicity of suits against the plaintiff by a successful litigant in ejectment cases; nor is it a bill to remove a cloud from a title, because it is apparent from the facts in the bill and in the adjudication of the Board of Property, which is attached to it, that the right of the Commonwealth is not a mere "cloud," but is so substantial that if evidence of it were offered in an action at law, the case would go to the jury.

The plaintiff cited the following cases to demonstrate that equity will sometimes assume jurisdiction in cases involving title to land, to wit: Sears *v.*

1 D. & C.

Scranton Trust Co., 228 Pa. 126; Pennsylvania Co. v. Railroad Co., 204 Pa. 356, and Wilhelm's Appeal, 79 Pa. 120. These cases are all based upon the principle decided by the Supreme Court in Sears v. Scranton Trust Co., 228 Pa. 127, in these words: "The fact that ejectment might lie will not necessarily oust the jurisdiction of equity. . . . Whatever may be the prayer of a bill, if the kernel of the controversy is the legal title to land, then equity cannot be invoked; but where the question of legal title is incidental and subordinate to other elements which call for the exercise of equitable remedies, equity will take and retain jurisdiction."

We have already held that the kernel of the controversy in this case is the legal title to the 54.91 acres tract. Having conveyed whatever title he had in the 54.91 acres tract to the American International Corporation, the plaintiff divested himself thereof, and he cannot now be heard to complain because, having divested himself of his title, he cannot maintain an action of ejectment, and, therefore, cannot establish his title.

It appears from the pleadings that the plaintiff filed a *caveat* before the Board of Property, and appeared and presented evidence before that body. Section 11 of the Act of April 3, 1792, 3 Sm. Laws, 70, applies to the leading question in this proceeding. The issuance of a patent under this section is binding and conclusive against "all parties and privies to the said *caveat* or suit," and is not binding or conclusive upon other parties. The patent issued by the Commonwealth is nothing more than its quit-claim deed, evidencing the transfer from the Commonwealth to the patentee of whatever right, title or interest the Commonwealth may have in the lands patented. It follows, therefore, that the plaintiff, by filing of his *caveat*, made the finding of the Board of Property binding and conclusive against him.

The sixth cause of demurrer alleges: "That upon the face of the plaintiff's bill it appears that the plaintiff has an adequate remedy at law;" and the seventh clause alleges: "That upon the face of the plaintiff's bill it appears that the plaintiff does not now have, and never did have, an undisputed legal title to the land in controversy, nor to all of the purchase money in escrow, wherefore he is not entitled to the relief prayed for."

We consider our conclusions relating to the third, fourth and fifth causes of demurrer to be conclusive, and, therefore, we only say, in disposing of the sixth and seventh causes of demurrer, that they are sustained. We think the plaintiff in this case had an adequate remedy at law: Black v. American International Corporation, 264 Pa. 260; Mercantile Library Co. v. University of Pennsylvania, 220 Pa. 328.

It appears from the record in this case that the plaintiff does not have an undisputed legal title to the land in controversy, nor to all of the purchase money in escrow, and, therefore, an injunction ought not to issue: Hicks v. Gas Co., 207 Pa. 570; Nanheim v. Smith, 253 Pa. 380.

In accordance, therefore, with the doctrine recognized and enforced in the cases above cited, and without expression of opinion on the merits of the case, we must decide that we have no jurisdiction to grant the relief prayed for, and that the demurrer of the United States Shipping Board Emergency Fleet Corporation, and all the causes of demurrer but the first of James F. Woodward, Secretary of Internal Affairs of the Commonwealth of Pennsylvania, are sustained and the bill dismissed.

From William Jenkins Wilcox, Harrisburg, Pa.